PERRY TRADING COMPANY v. THE CITY OF TALLAHASSEE and G. POWLEDGE, Chief of Police of the City of Tallahassee.

174 So. 854.

En Banc.

Opinion Filed June 8, 1937.

*Julius F. Parker* and *Clyde M. Atkinson,* for Appellant; *Guyte P. McCord,* for Appellees.

ELLIS, C. J.—The Perry Trading Company is a private corporation existing under the laws of Florida. It is engaged in the business of selling furniture at a permanent location in the City of Tallahassee. It carries a "full and complete stock of furniture, merchandise and accessories."

On January 12, 1935, the City of Tallahassee enacted an Ordinance entitled:

"AN ORDINANCE Regulating the Sale and Offering for Sale at Public Auction of Goods, Wares and Merchandise in the City of Tallahassee, and to Provide Penalties for the Violation thereof, and Declaring an Emergency to Exist.

*"Whereas,* auction sales of goods, wares and merchandise are being conducted from time to time in the City of Tallahassee and on account of the method, manner and procedure characteristic and usual at auction sales and which are followed at such local auction sales, it is deemed proper for the safety, convenience, property and general welfare of the inhabitants of the City of Tallahassee to place certain restric-

tions, limitations and restrictions on such auction sales hereafter held in said City; and

"*Whereas,* in furtherance of the safety, convenience, property and general welfare of the inhabitants of the City of Tallahassee, such regulations, limitations and restrictions on auction sales of goods, wares and merchandise should become effective earlier than the effective date of ordinances (other than emergency ordinances) as provided by the Charter Act of said City; Therefore,

"Be it Enacted by the People of the City of Tallahassee."

The last section of the Ordinance declared it to be an emergency measure and provided that it should become effective about a month after its enactment.

About nine months after the Ordinance, according to its terms became effective, the Perry Trading Company exhibited its bill in the Circuit Court for Leon County and prayed for a permanent injunction against the City and its employees prohibiting them from enforcing the Ordinance in its entirety or in any of its provisions as against the Perry Trading Company in the conduct or proposed conduct by it of any auction sale of its furniture, merchandise and accessories in its permanent place of business located, as stated, in the corporate limits of the City of Tallahassee.

The Ordinance provides in substance as follows: Section 1, that no person, firm or corporation shall conduct any sale at auction of goods, wares and merchandise in the city without full compliance with the regulations, restrictions and limitations set forth in Sections 2 to 8 inclusive of the Ordinance. Section 2 provides that auctions shall be conducted only by a licensed auctioneer or by the owner of the goods, wares and merchandise, and only between the hours of 8 A. M. and 6 P. M. on days other than Sundays. Section 3 undertakes to prevent the owner of the merchandise to be sold from withdrawing from sale an article of merchandise

offered before the sale is completed; that is to say, before the hammer of the auctioneer falls. In other words, the Section seeks to compel the owner of the merchandise at an auction sale to accept the best of two or more *bona fide* bids for the purchase of the thing offered for sale, notwithstanding the price so offered might be wholly inadequate or greatly disproportionate to the value of the article.

Section 4 undertakes to prevent any person from employing a "false bidder," "capper" or "puffer" at such sale and to prevent any participation in such bidding except in the capacity of a *bona fide* purchaser.

Section 5 requires each article of merchandise sold at an auction sale to be tagged or labeled with a kind of poster or written description of the "kind and nature of the material or materials" of which the article to be sold is made or composed and a general description of the articles and the quality thereof.

Section 6 requires at least one week's publication of a notice of the proposed auction sale which notice shall contain a description of each article or articles to be sold, the time and place of the proposed sale and the terms and conditions of the sale which are to be consistent with the terms imposed by the ordinance; that the proposed sale is to be limited to the articles advertised and the notice shall be published in a local newspaper not less than one week nor more than two weeks before the proposed sale.

Section 7 requires that on and after the date of the publication of the notice required in the preceding section the goods proposed to be offered for sale shall be separated from the general stock and placed where the same may be inspected and examined by persons who may be interested in such proposed sale, and that the display of such articles shall be so made and the goods proposed to be sold segregated from the rest of the stock so that such prospective

purchasers or persons interested may have easy access to the same to enable them to examine such goods and wares as to "quality, condition and material."

Section 8 requires the owner of the merchandise, who proposes to conduct the auction sale, prior to the date advertised for the same to give a bond in the sum of $1,000.00 with good and sufficient sureties to be approved by the City and the Clerk of the City, conditioned upon the complete performance of all the conditions required by the ordinance in the conduct of the sale. The bond so required is to be payable to the City of Tallahassee for the benefit of any person who may suffer any injury or damage by reason of the failure of the merchant to comply with any of the conditions imposed by the Ordinance, and provision is made for suit by such person in the name of the City against the principal and sureties upon such bond.

The bill alleges that the Perry Trading Company had planned and is planning to conduct auction sales of its furniture, merchandise and accessories in the storeroom occupied by it as a permanent place of business and without regard to the requirements and limitations of the Ordinance above mentioned, but that the City, through its police officers, has advised the Perry Trading Company that immediately on the Company's holding or attempting to hold or conduct an auction sale, without complying with each and every Section of the Ordinance which regulates sales at auction, the said Ordinance will be enforced to the particular requirement of each and every section thereof.

The Ordinance provides that each infraction or violation will be deemed and held to be a separate and distinct offense. The Ordinance carries penalties for each violation thereof of not less than $50.00 nor more than $500.00, or by imprisonment for not more than sixty days.

. The Ordinance also provides that it was not intended to

affect the provisions of an Ordinance passed in 1931, regulating the auction sale of jewelry, silver and glassware, and other such articles.

The city, by its attorney, moved to dismiss the bill upon the ground that it contained no equity and stated no cause entitling the complainant to the relief prayed for.

On the 9th day of December, 1935, the court entered its final decree granting an injunction prayed for as to the enforcement of the provisions of Sections 6, 7 and 8 of the Ordinance, and denied injunction as to the enforcement of Sections 1, 2, 3, 4, and 5 of the Ordinance.

On the 3rd of January, 1936, the complainant took an appeal from so much of the decree as denied relief against the provisions of Sections 1, 2, 3, 4 and 5 of the Ordinance and the defendant city took a cross-appeal as to so much of the decree which granted the injunction sought as to the provisions of Sections 6, 7, and 8 of the Ordinance.

The appellant, Perry Trading Company, omits from its assignment of errors any objections as to the decree in so far as it applies to Sections 1 and 4 of the Ordinance.

Those sections, it will be noted, prohibit anyone from conducting an auction sale within the City of Tallahssee of any goods, wares and merchandise unless he complies with the requirements of all provisions of the Ordinance embraced in Sections 2 to 8 inclusive, and which prohibits the employment by anyone at an auction sale of a "booster," "capper" or "puffer," as they are called, whose function seems to be to make fictitious and insincere bids for the purpose of stimulating bids at the sale.

It was stated in the oral argument, by solicitors for the appellant, that the provisions of Section 4 of the Ordinance in no wise concerned the complainant because its auction sales would be conducted without the aid of persons employed to make fictitious and deceptive bids; that the Com-

pany had conducted auction sales and would continue to do so in a manner entirely consistent with a fair and meticulous observation of all requirements of fair dealing and in strict compliance with all rules and regulations affecting the conduct of legally conducted auction sales.

The cross-assignments of error interposed by the city attack the decree in so far as it holds the provisions of Sections 6, 7 and 8 to be invalid. We will first consider the provisions of those sections. It is obvious that the purpose of those sections was not to regulate but to place such restrictions and limitations upon the conducting of a perfectly legitimate business as to destroy the usual motive which is reasonable profit in the conduct of such business. The requirements of advertising each sale for a period of a week and no longer than two weeks would render it impractical, if indeed not illegal, to carry in one notice an account of more than one sale. That requirement together with the other requiring a listing of each article to be sold and a meticulous description of its quality and material would place such a burden of expense upon the holding of the sale as would destroy the motive for conducting it. The requirement to segregate each article of merchandise intended to be sold at the auction from all other merchandise in the store so that it may be examined separately from other articles in the store by persons interested and to keep the same on such exhibition for the period of the advertisement would require an outlay of expense for storeroom which in itself would seriously interfere with reasonable profit making in the sale of the merchandise and incidentally interfere with and hamper the conduct of the usual business of the store.

The requirement as to a bond and the cost of procuring the same would place an additional burden of expense, so that the several requirements contained in the provisions of

Sections 6, 7 and 8 of the Ordinance would render the holding of an auction sale, which might in every respect be honestly and fairly held in the exercise of the constitutional rights of the seller of the merchandise, peculiarly unprofitable, and destroy all motive or reason for the conducting of such business.

Such stringent and oppressive regulations as those are not necessary in the exercise of the police power to further the health, peace and general convenience of the community. Indeed it is difficult to perceive in what manner the health, morals, peace or convenience of the community could be promoted by requiring the publication of a notice of sale, necessarily long because of a description of the particular articles intended to be sold, and the requirement of the bond to indemnify persons who might be injured by a failure to comply with the requirements of the Ordinance.

On the other hand, it is apparent that such requirements, while not making any contribution toward the public health, morals, peace and convenience of the community, impose such burdensome restrictions and expense upon the conduct of the business of the sale of merchandise by auction as to destroy all legitimate motive for sales by that method.

In the case of Pounds v. Darling, 75 Fla. 125, 77 South. Rep. 666, we held that: "To be valid an ordinance must be reasonable and not in conflict with any controlling provision or principle of law * * * and if any doubt exists as to the extent of a power attempted to be exercised by a municipality out of the usual range, or which may affect the common law right of a citizen, it is to be resolved against the municipality." Text 132.

The business of selling goods by auction is, according to some authorities, as old as the law of sale, and the matter of notice was not a legal requirement, being left entirely to the discretion of the owner of the merchandise, the purpose

of the notice being to attract bidders to the sale. It was not required to state the terms and conditions of the sale, nor was the owner of the goods bound by such terms even if he stated them in the notice because an auction was merely an offer to sell goods at public outcry to the highest bidder, in which transaction both the auctioneer and the bidder might withdraw the proposition to sell or buy before the completion of the sale. 2 R. C. L. p. 1117, 1122.

These inherent features of an auction sale necessarily involve the principles of contract, which right is secured to individuals under our Constitutions both State and Federal. State, *ex rel.* Fulton, v. Ives, 123 Fla. 401, 167 South Rep. 394; Dusenbury v. Chesney, 97 Fla. 468, 121 South. Rep. 567.

In the last cited case the doctrine was definitely stated that cities may not directly prohibit auction sales nor adopt such unreasonable or oppressive regulations as would indirectly produce such results, and there is no reasonable justification for the suppression of auction sales; that while such sales are subject to regulation under the police power they must be of such character as the circumstances and conditions require.

In the case of Roach v. Ephren, 82 Fla. 523, 90 South. Rep. 609, this Court, speaking through Mr. Justice WHIT-FIELD, said: "The reasonableness of a statute is not open to judicial review unless organic law is thereby violated; but the reasonableness of a municipal ordinance is subject to judicial determination." Text 526.

In that case the Court, considering the imposing of a municipal tax upon a certain kind of business declared the doctrine that where the imposition of a certain burdensome tax did not affect public health, morals or safety it was clearly unreasonable and therefore void.

The doctrine is applicable to that situation where a city, under the guise of exercising the police power, imposes such limitation and burdens on conducting a legitimate business as to seriously impair the right to conduct such business where there is no question of public health, morals or safety involved.

Solicitor for the appellees contends that the provisions of Sections 6, 7, and 8 of the Ordinance are valid as a lawful and reasonable exercise of the power of the city to regulate auction sales of goods, wares and merchandise under the specific and general powers granted by the Legislature to the City of Tallahassee. Those powers are referred to in his brief as being delegated to the city under the provisions of Chapter 8374, Laws of Florida, Acts of 1919, as amended by Chapter 13437, Acts of 1927.

It is stated that Section 7 provides for the adoption by the city of local police, sanitary and other similar regulations, not in conflict with the laws of the State of Florida; to do whatever is necessary and proper for the safety, health, convenience and general welfare of its inhabitants."

"Sec. 136. Police Power. The City Commission shall have power to pass all such ordinances and laws, not inconsistent with the Constitution and laws of the United States and of this State, as may be expedient and necessary for the preservation of the public peace and order, for the suppression of riots and disorderly assemblies, and for the good order and government of the city, and to impose such pains, penalties and forfeitures as may be needed to carry the same into effect; provided, that for no offense made punishable by the laws and ordinances of said city shall a fine of more than five hundred dollars, or imprisonment for a period of time longer than sixty days, be imposed.

"Sec. 138. General Laws to Apply. All general laws of the State applicable to municipal corporations, now or which

may hereafter be enacted, and which are not in conflict with the provisions of this Charter or with the ordinances and resolutions hereafter enacted by the City Commission, shall be applicable to this city; provided, however, that nothing contained in this Charter shall be construed as limiting the power of the City Commission to enact any ordinance or resolution not in conflict with the Constitution of the State or with the express provisions of this Charter."

The powers granted to the City of Tallahassee under the above quoted sections of the statute are merely police powers usually delegated to municipalities in the exercise of which ordinances may be adopted in the interest and promotion of the public health, morals, peace and convenience.

In the preamble to the Ordinance which is under consideration in this case the word "property" is used in connection with the terms "safety," "convenience" and "general welfare" in the interests of which the police power is attempted to be exercised. It is not explained how the exercise of the police power may be "proper" for "property"; however, there is no contention in this case by appellees that the property interests of the city nor the private property of its citizens is in jeopardy by the holding of sales of merchandise by auction which it is stated in the preamble "are being conducted from time to time in the City."

The police power when properly delegated to the municipality may be exercised for the convenience, safety, morals and peace of its citizens, but the extension of it to the general welfare of its citizens and for the benefit of their property rights except as the same may be affected by riots and breaches of the peace, involves the introduction of refinements in reasoning which are not clearly developed in the brief and as to which we have been unable to find any authority in the decisions to support.

Stripped, therefore, of the superfluous and very vague terms used in the preamble, the police power possessed by the municipality of Tallahassee was exercised in the passage of this Ordinance, in which it declared it to be reasonably proper for the convenience, health, peace and morals of the city, which purpose marked the limits within which the police power may be exercised.

The provisions of Sections 6, 7 and 8 of the Ordinance are within the reasonable exercise of such power according to the contention of appellees, but the brief does not specifically point out how either the convenience of the public or its health or morals or the peace of the community are subserved by the regulations embraced within those sections of the Ordinance.

Counsel for appellee, in his brief, asks the question: "What is the burden on the honest auctioneer in complying with the provisions of" these sections? The Socratic method of argument serves very well in defense, but it was not used, as we are advised, by the famous Philosopher after whose name the method of argument is designated, to maintain an affirmative proposition.

The requirements of the provisions of Sections 6, 7 and 8 would not offend an auctioneer or the owner of the goods, wares and merchandise who conducts an auction sale in accordance with the requirements of law and in the exercise of fair methods for disposing of his wares by that method of sale. It cannot be assumed, nor is it a matter of general knowledge of which the court can take notice, that all auction sales of merchandise are unfair, fraudulent and adverse to the public interests. On the contrary, if any presumptions exist at all they are in favor of the merchant, permanently located in the community with a permanent place of business at which his merchandise is always open to inspection by those of the public who may be interested in

purchasing the same, that the methods adopted by him in the sale of such merchandise by auction will be fair, just, reasonable and not calculated to deceive the bidder at such sale.

As stated heretofore, the method of sale by auction is as old as the law of sale and in such method the seller and the prospective purchaser have the equal right to withdraw from the propositions before the hammer falls or the sale is completed. The auction is a mere proposal to sell the specific article offered. Until there is a proposal to buy and an acceptance of that proposal there is no sale and the authorities hold unanimously that each party to the transaction may withdraw the property at any time before the closing of the transaction.

It is not conceivable that in this method any harm is produced to the prospective purchaser nor that his rights are in any wise curtailed. Just what is meant by giving the purchaser a "break" in an auction sale is not clear, for the purchaser has the privilege of examining the article offered for the purpose of satisfying his judgment as to its value. The doctrine of *caveat emptor* applies and the auctioneer is privileged to use his "sales talk" as liberally as is done by the usual vendor of merchandise at a private sale.

While it is true that an auction sale tends to stimulate buying by the occasional spirit of competition which pervades the prospective purchasers present, it cannot be said that the auctioneer is guilty of dishonest methods by taking advantage of that normal condition and doing what he can to stimulate it. But it is not conceivable that a municipality can extend the exercise of the police power to the point of attempting to safeguard the material or pecuniary interests of the prospective purchasers at such sale even though there may be in the crowd assembled many persons whose buying proclivities and acquisitive predilections may

be stimulated by competition and the "barker's" technique of the auctioneer.

The question is, in what respect is the police power reasonably exercised by requiring that the auctioneer publish notice of his proposed sale in a newspaper and give in detail a description of the articles to be sold and keep such articles segregated from the residue of his stock with labels attached to them giving complete and accurate description of the quality of material and the character of construction of each article proposed to be sold and requiring the execution of a bond to faithfully comply with all the burdensome and expensive details required by the Ordinance to be observed prior to the sale and at the sale.

Those requirements, we think, are unreasonable burdens placed upon a legitimate business and obviously have for their purpose not the regulation of auction sales, but the suppression of the same. Nor is it apparent that the suppression of such sales is in the interest of the general public.

The case of Anderson v. City of Tampa, 121 Fla. 670, 164 South. Rep. 546, cited by appellees, is not analogous because the police power of the City of Tampa was exercised in that case to regulate the sale in bottles of a generally recognized food product called milk. There was no contention that the city was not so authorized, but the question turned upon whether it was empowered to require a bottled product called chocolate milk to be composed of milk containing at least 3½% butterfat. A majority of the Court held that it was within the power of the city to enact an ordinance regulating the sale of a food product so generally recognized to bear a close relation to the health of the consumers of such product.

Mr. Justice DAVIS, however, in a very able and lucid opinion, dissented from the conclusion of the majority, and in the course of his discussion said: "While the fact has al-

most been lost sight of by the lawmaking bodies of the nation, high and low, state and municipal, there is a well-defined limit beyond which the police power cannot be exercised to accomplish spoliation of private business under guise of promoting either public health or affording protection from fraud." Text 584.

To that doctrine this Court, as its opinions will show, has adhered and we think that it applies with peculiar cogency of reasoning.

The case of State, *ex rel*. McAuley, v. York, 90 Fla. 625, 106 South. Rep. 418, is likewise not analogous, as it involved the unquestioned power of the city to regulate traffic upon the public streets of the city in the interest of public convenience.

We have examined the brief of counsel for appellees and the citations of authority cited by him, but fail to find in them any persuasive arguments that the decision of the chancellor as to the provisions of Sections 6, 7 and 8 were unreasonable.

The decree of the Chancellor is therefore affirmed in so far as it relates to said sections of the Ordinance.

We consider now the appellant's objection to the provisions of Sections 2, 3 and 5 of the Ordinance which, as stated, relate among other things to the limitation of the hours within which auction sales may be made to the hours designated as 8 A. M. and 6 P. M. and impliedly prohibits auction sales before 8 A. M. and after 6 P. M. and requiring the merchant who sells his goods at auction to accept the highest bid offered for the merchandise after two or more bids, thus denying to him the right to withdraw the proposal of sale before the conclusion of the contract; and requiring each article to be sold to have attached thereto a written or printed statement as to "the kind and nature of the material or materials of which such article is made or

composed and a general description of the article or articles and the quality thereof."

These requirements, we likewise consider to be unreasonable and in excess of the legitimate exercise of police power in that they make neither for the health, peace, morals or convenience of the public but, on the other hand, arbitrarily limit the right of the auctioneer or salesman to use his "sales talk" within the limitations of fair dealing, and to withdraw the proposal of sale before the conclusion of the contract while not requiring the second or third or other bidder subsequent to the first to complete his contract by purchase.

While pure food and drug Acts may require a statement of the ingredients contained in a bottled product, it would require a vivid imagination not resting on financial necessity or convenience, to apply such provisions to the sale of cloth, furniture and such like articles of commerce. It cannot be said that the Ordinance was enacted to conserve public peace by the prevention of crowded assemblies in permanent places of business after the hours of 6 P. M., because if such were its purpose it would be highly discriminatory, as it is a matter of local knowledge, of which as to this community the Court may take notice, that large crowds of people are permitted without municipal interference to assemble once a week upon a main thoroughfare of the city in front of a local theater after six o'clock P. M., in the hope, if not reasonable expectation, of participating in the proceeds of a "lucky draw" determinative of pecuniary reward to the person present in such crowd whose name may be drawn from a basket where several thousands of other names are placed. It cannot be said as a matter of general knowledge, nor as a matter of local experience, that the assembling of such crowds of people has been productive of either public inconvenience or breaches of the peace; and with equal or more cogency of reasoning it may be said that

no such deleterious results to the public convenience or peace would result from the assembling of a comparatively few people in a private but permanent place of business to which a few seekers for bargains may be attracted in the reasonable hope of purchasing an article of furniture or other merchandise at a price less than its current value.

In the case of *Ex Parte* Harrell, 76 Fla. 4, 79 South. Rep. 166, this Court announced the doctrine, through Mr. Justice TAYLOR, that:

"We cannot discover how an ordinance requiring every person conducting a legitimate mercantile business in a town, except a few specially favored classes, to close their places of business at 6:30 o'clock P. M., can in any manner, directly or remotely, even tend to promote public health, public morals, the public safety or the good order and peace of the community; but, on the contrary, we think that the provision of the ordinance in question for a violation of which the petitioner is held in custody is an unwarranted governmental interference with the personal rights of the merchant class of the citizens of the town, and is void, and that the conviction and sentence of the petitioner by the Mayor for its infraction is not warranted by law and is a nullity."

As stated before in this opinion, the fact of the sale of goods, wares and merchandise by auction is a "legitimate" method of disposing of goods, wares and merchandise by public sale and such method of sale does not come within the class of such sales which, by reason of the peculiar nature and character of the goods offered and the transitory character of the seller, bring such sales within the reasonable regulatory power of municipal authority.

It was in consideration of such conditions that this Court held in the case of Levy v. Stone, 97 Fla. 458, 121 South. Rep. 565, in an opinion by Mr. Justice STRUM, that an or-

dinance regulating the sale by auction and limiting such sales to the hours of 8 A. M. to 6 P. M. was valid. The Justice writing the opinion upon this subject said:

"The police power may be exercised in appropriate cases (see People v. Beakes Dairy Co., 119 N. E. R. 118, 3 A. L. R. 1267) to protect the public against loss from fraudulent or uscrupulous practices in commercial and financial transactions, particularly where the thing dealt with, or the method of dealing, readily adapts itself to the perpetration upon the public of deception or fraudulent imposition. Holsman v. Thomas, 147 N. E. R. 750, 39 A. L. R. 760; Biddles v. Enright, 146 N. E. R. 625, 39 A. L. R. 766. See also Goldstein v. Maloney, 62 Fla. 198, 57 So. R. 342.

"There is some diversity of opinion amongst the courts upon the validity of a municipal regulation limiting the conduct of auction sales of jewelry and the like to daylight hours. See Miller v. City of Greenville, 132 S. E. R. 591, 46 A. L. R. 155; Robinson v. Wood, 196 N. Y. Supp. 209; Peoples v. Gibbs, 152 N. W. R. 1053; Ann. Cas. 1917 B 830. The substantial weight of authority, however, and in our opinion the better reasoning, supports the validity of such regulation when confined to auction sales of the class of merchandise enumerated in the Ordinance under consideration. Whether the same would be true with reference to other clasess of merchandise is not now before us for consideration.

"The circumstances and incidents which accompany the sale at auction of the class of merchandise affected by the ordinance here under consideration are generally recognized as affording a reasonable basis of classification for the purpose of imposing upon such sales, in the exercise of the regulatory police power, the regulation here involved, even though the same regulation be not imposed upon auction sales of other commodities. The classification being rea-

sonable and its operation uniform as to all persons who desire to sell at auction merchandise of the class here involved, the validity of the classification cannot be successfully assailed merely because its scope is not sufficiently broad to include all possible abuses of this general nature. See Bow v. Cleveland, 124 N. E. R. 132, 12 A. L. R. 1424. See also Noble v. State, 68 Fla. 1, 66 South. Rep. 153.

"It is a matter of common knowledge that in the sale of merchandise of the character affected by this ordinance the public is more readily deceived and becomes an easy prey to fraud, and that auction sales of such merchandise are therefore attended with greater risk to the public. Such sales afford peculiar opportunity to impose upon, defraud and cheat the public because the public generally is unskilled in the art of determining the purity, quality and value of merchandise of this character, to determine which deliberate care and often scientific tests are necessary. It is further a matter of common knowledge that fraud and irreparable injury to the public are more likely to occur in auction sales of merchandise of the character here under consideration when the same are conducted after nightfall and by artificial light, and in the excitement of competitive bidding when little or no opportunty is offered for careful inspection, than in the case of other classes of goods, or in the sale of the character of goods under consideration held during the day time in the ordinary course of business. The rapid sale of such articles at public auction at night, when purchasers must buy at a glance under artificial lights and under the stimulus of competitive bidding, exposes many persons to deception and unscrupulous practices against which this character of regulation might protect them. Similar opportunities for practicing fraud and deception upon the public do not ordinarily attend auction sales of other commodities, the quality and value of which are readily ascer-

tainable by the ordinary person. The circumstances just stated, and others, furnish practical reasons for the imposition of regulations of this nature upon the sale at auction and at night of jewelry, precious stones, glassware, and the like, which reasons do not exist with respect to auction sales in other lines of business."

Those views were concurred in by all members of this Court and very lucidly explained the conditions existing in the sale of jewelry by night as constituting a sufficient ground of the classification of the sale of such property by auction under reasonable regulations as to the time when such sales may be made.

The Ordinance under consideration which apparently was modeled upon an ordinance considered by this Court in the case of Adams v. Isler, 101 Fla. 457, 134 South. Rep. 535, is an attempt on the part of the city to extend the provisions of the ordinance involved in the Isler case to the sale by auction of all classes of goods, wares and merchandise without any attempt to classify such merchandise as being within the distinguishing features of the character of merchandise dealt with in the ordinance considered in the Isler case.

But we think that the Ordinance under consideration in this case is amenable to the application of the doctrine announced by this Court in the case of Cawthon v. Town of DeFuniak Springs, 88 Fla. 324, 102 South. Rep. 250, in which it was said, Mr. Justice WHITFIELD writing the opinion for the Court, that:

"The Legislature can legally authorize the exercise of the police power only for proper purposes and only to the extent that is necessary to conserve the public welfare in the premises."

See also Maxwell v. City of Miami, 87 Fla. 107, 100 South. Rep. 147; see also Roach v. Ephren, *supra*.

444

We think that the Ordinance in question, Sections 2, 3 and 5 are invalid as being an unreasonable exercise of the police power and designed without any purpose of promoting the public peace, health, morals or convenience and the effect of which provisions would be to interfere with the legal and constitutional rights of local merchants with permanent places of business to conduct the legitimate sales of their goods, wares and merchandise by auction.

So much of the decree therefore as declares the provisions of Sections 2, 3 and 5 of the Ordinance to be valid is hereby reversed.

So ordered.

TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.