Jones *v.* City of Jackson *et al.*

(*Jackson*, April Term, 1953.)

Opinion filed June 5, 1953.

330

HERRON C. PEARSON and OLIVER H. JONES, both of Jackson, for complainant.

W. E. LEECH and WALDROP, HALL & WINNINGHAM, all of Jackson, for defendants.

Mr. Justice Prewitt delivered the opinion of the Court.

The bill in this cause was filed by Kirby Jones, a furniture dealer in the City of Jackson, to have declared void an ordinance of the city which undertakes to regulate the sale of personal property by auction within the corporate limits, but excepting auction sales by a judicial order and such sales by executors or administrators, trustees, etc.

A demurrer was filed by the city and the eighth ground thereof was sustained by the Chancellor, which meant that he sustained and upheld the ordinance as a valid exercise of the police power of the city. While the Chancellor upheld the validity of the ordinance, he deleted certain sections, to-wit: paragraphs c, f, g and j of Section 2, subsection 1; and subsections 6 and 13 of Section 4. In the opinion of the Chancellor, these deleted sections offended Section 1, Article 8, of the Constitution of Tennessee, which provides:

"That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed, or deprived of his life, liberty, or property, but by the judgment of his peers or the law of the land."

In order to understand the problem, it is necessary that we copy the ordinance, which is as follows:

"An Ordinance to Regulate the Manner of Holding Auctions Within the City of Jackson so as to Prevent Defrauding of the Public; to Regulate Auctioneers;

to Provide for Permits for Holding of Auctions; Manner of Applying for Same; to Declare Certain Offenses a Misdemeanor; and to Provide a Penalty for the Violation Hereof.

"Be It Ordained by the Board of Commissioners of the City of Jackson:

"Section 1. That from and after the effective date of this Ordinance all public or private auctions of personal property within the City of Jackson shall be controlled and governed by the provisions of this Ordinance, except auctions held pursuant to the order of a Court of Records, or to sales of executors or administrators, bona fide sales by trustees under recorded mortgages or deeds of trust, or by lien holders acting in accordance with law.

"Section 2. Be It Further Ordained that no person, firm or corporation directly or indirectly through agents or otherwise shall conduct any auction described in Section 1 hereof without first having obtained a permit for conducting same, through a regularly licensed auctioneer, as hereinafter provided.

"1. Any person desiring to conduct such an auction sale shall first file a written application for permit therefor with the Board of Commissioners stating:

"a. The name, address, and occupation or business of the person, firm or corporation desiring to conduct such auction.

"b. The name, address and occupation or business of the person, firm or corporation for whom the auction is to be conducted, if other than the applicant.

"c. The name and address of the owner of the merchandise, stock of goods, or other personal property to be offered at such auction, with a true, complete, itemized and sworn inventory of such prop-

erty, showing the cost price thereof and the source of the title thereto, said cost information to be treated as confidential by the Bóard of Commissioners, except in prosecution for violation of this Ordinance.

"d. The place and hour of such auction with an estimate of the duration thereof.

"e. A statement showing dates, places and nature of merchandise sold at all other auction sales by the applicant and/or the owner of the property to be auctioned within two (2) years next preceding the date of the application.

"f. Whether or not additional merchandise, other than the inventory filed, or what is called 'fill in' stock, will be offered at such auction and if so, the general nature and previous ownership of such additional 'fill in' stock, with a true, complete and itemized sworn inventory thereof, showing the cost price and source of title thereof, said cost information to be treated as confidential by the Board of Commissioners, except in prosecution in violation of the Ordinance.

"g. A copy of proposed advertisements to be made of such auction; and/or an agreement by the applicant, that the quantity or history of the merchandise will not be misrepresented in any advertisement thereof.

"h. Whether or not any other application for permit by him or the owner of the goods has been refused; and/or whether any such permit has been revoked or challenged after its issuance.

"i. The name and address of the Auctioneer or Auctioneers who will call or cry the auction.

"j. The necessity of reasons for the conducting of such auction.

"2. The applicant shall file with said application a bond in the penalty sum of $1,000.00, with good and solvent sureties, in the following form, to-wit:

"State of Tennessee

"County of Madison

"Know all men by whose presents: That we ——, Principal and —— and —— Sureties, are held and firmly bound unto the City of Jackson for its own use in the penal sum of One Thousand Dollars for the payment whereof well and truly to be made, we bind ourselves respectively and our heirs and administrators.

"The condition of this bond is such, that whereas the above —— has made application to the Board of Commissioners of the City of Jackson which requires said applicant to give bond in the penalty of $1,000.-00, now therefore, the said —— does well and truly conform to the provisions of said ordinance then this obligation shall be void otherwise to remain in full force and effect for the period of one year from the date of this bond.

"It is expressly understood that this bond is payable to and receiverable by The City of Jackson for its own use and for the use of all persons suffering loss or damage by reason of the violation of said ordinance by the above named principal, and to compel the principal herein to perform the obligation herein undertaken."

The Chancellor deleted paragraph c under Section 2 requiring the names and addresses of the owners of the merchandise or other personal property to be offered at such auction, with the true and sworn inventory of the property, showing the cost price thereof and the source of title thereto.

The lower court also deleted paragraph f of said Section 2 which required the applicant to state whether or not additional merchandise, other than the inventory filed, or what is called "fill in" stock, will be offered at such auction, and if so, the general nature and previous ownership of such additional or "fill in" stock with the true and sworn inventory thereof, showing the cost price and source of title thereof.

The lower court also deleted paragraph g of Section 2 requiring a copy of proposed advertisements to be made of such auctions.

The Chancellor deleted paragraph j of Section 2 which would have required the applicant to give reasons for the conducting of the auction.

Further, subsections 6 and 13 of Section 4 were stricken from the Ordinance. Subsection 6 prohibited the sale of any merchandise which did not have firmly attached thereto the name of the manufacturer; and subsection 13 of Section 4 prohibited the dealer from selling or offering for sale at such auction any article not specifically listed in the inventory, filed with the Board of Commissioners.

The ordinance attacked, if upheld, must be under the police power of the city which enables municipalities to pass regulations to promote the public health, morals, safety and general welfare.

The leading case in Tennessee is *Spencer-Sturla Co.* v. *City of Memphis,* 155 Tenn. 70, 290 S. W. 608, in which it was held in a zoning ordinance that exclusion from a residential district of a commercial enterprise generally is a valid exercise of the police power and is not unreasonable.

We have no case in point in Tennessee.

The decision of the Legislature as to what is a sufficient reason to justify a classification made in police

336 of 100

measures will not be reviewed by the courts unless it is palpably arbitrary. *Darnell* v. *Shapard,* 156 Tenn. 544, 3 S. W. (2d) 661; *Chattanooga Dayton Bus Lines* v. *Burney,* 160 Tenn. 294, 23 S. W. (2d) 669.

■ Where the specific power to regulate a business is conferred by the Legislature upon the Board of Commissioners of a city, such Board of Commissioners has the right to "regulate" and to adjust by rule, method or governing principles of law. *State ex rel. Saperstein* v. *Bass,* 177 Tenn. 609, 152 S. W. (2d) 236; *Silverman* v. *City of Chattanooga,* 165 Tenn. 642, 57 S. W. (2d) 552.

The power to exercise a sound discretion is implicit in the power to regulate. *State ex rel. Major* v. *Cummings,* 178 Tenn. 378, 158 S. W. (2d) 713, 139 A. L. R. 837; *Large* v. *City of Elizabethton,* 185 Tenn. 156, 203 S. W. (2d) 907.

■ An ordinance is not invalid merely because it regulates a lawful business and due process of law is not denied when an ordinance fairly and reasonably regulates a lawful business.

■ The holding of certain provisions of an Act invalid does not destroy the entire Act so long as there is enough left where it is capable of being executed in accordance with the apparent legislative intent. *Miller* v. *City of Memphis,* 181 Tenn. 15, 178 S. W. (2d) 382, 151 A. L. R. 1172.

■ Complainant's statement in his bill that the ordinance is not valid is not supported by statements of specific facts from which complainant might draw such a conclusion and in the absence of further statements of specific facts justifying the conclusions therein, such statements are insufficient to evoke the aid of a court of equity, as is here sought.

From 111 A. L. R., p. 473, we quote the following:

"The general proposition that the business of auctioneering is a legitimate subject of regulation

to prevent abuses and frauds, which was laid down in the annotation in 31 A. L. R. at page 299, and was also supported by the cases cited in the supplemental annotation in 39 A. L. R. at page 773, has found additional support in the following more recent cases: Alabama.—*Davidson* v. *Phelps* (1926) 214 Ala. 236, 107 So. 86; Arkansas.—See *Balesh* v. *Hot Springs* (1927) 173 Ark. 661, 293 S. W. 14; California.—[In] Re West (1925) 75 Cal. App. 591, 243 P. 55; Florida. —*Levy* v. *Stone* (1929) 97 Fla. 458, 121 So. 565; Georgia.—*Clein* v. *Atlanta* (1927) 164 Ga. 529, 139 S. E. 46, 53 A. L. R. 933; Indiana.—*Gordon* v. *Indianapolis* (1932) 204 Ind. 79, 183 N. E. 124; Kentucky.— *Com.* v. *Loeb* (1932) 245 Ky. 843, 54 S. W. (2d) 373; Michigan,—*Saigh* v. *Petoskey* (1930) 251 Mich. 77, .231 N. W. 107; Mississippi.—*Matheny* v. *Simmons* .(1932) 165 Miss. 429, 139 So. 172; New Jersey.— *Wagman* v. *Trenton* (1926) 102 N. J. L. 492, 134 A. 115; Wisconsin.—*Doering* v. *Swoboda* (1934) 214 Wis. 481, 253 N. W. 657.''

In *City of San Antonio* v. *South Trunk Co.*, Tex. Civ. App., 13 S. W. (2d) 401, the court had under consideration the validity of an ordinance of the City of San Antonio regulating, among other things, the sale of trunks by auction. This ordinance also proposed to regulate the auction sales of jewelry, pictures, paintings, rugs, trunks, suitcases, etc., but should not apply to judicial sale or sales by trustees, etc.

Practically all of the courts that have passed on what are called ''jewelry auction ordinances'' have upheld them. *Davidson* v. *Phelps*, 214 Ala. 236, 107 So. 86; Ex *parte West*, 75 Cal. App. 591, 243 P. 55; *Mogul* v. *Gaither*,

142 Md. 380, 121 A. 32.

As will be seen from *City of San Antonio* v. *South Trunk Co.*, supra, that ordinance was broader than the ordinary jewelry ordinance and covered pictures, paintings, rugs, trunks and suitcases.

The whole idea of these ordinances is to protect the public and to minimize deception. Deception can be had in the auction sale of furniture just as much as in the auction sale of rugs, suitcases and trunks. We think the holding in the Texas case just referred to is sound.

We have considered the case of *Perry Trading Co.* v. *City of Tallahassee,* 128 Fla. 424, 174 So. 854, 111 A. L. R. 463, holding invalid an ordinance such as the one now before us but we are of the opinion that the Texas case supra is the sounder view.

We have not taken up the various parts of the Ordinance separately but we have carefully read the Ordinance and we believe the Chancellor has reached the right conclusion in upholding the validity of the Ordinance after striking out the several parts enumerated in his decree.

It results that the decree of the Chancellor is affirmed.