76 So.2d 665 (1954)
CHARNOFREE CORPORATION, a Florida corporation, and Fontainebleau Hotel Corp., a Florida corporation, Appellants,
v.
CITY OF MIAMI BEACH, a municipal corporation organized and existing under the Laws of the State of Florida, and O.M. Pushkin, as Chief Building Inspector of and for the City of Miami Beach, a municipal corporation organized and existing under the Laws of the State of Florida, Appellees.
Supreme Court of Florida. Division A.
December 14, 1954.
Rehearing Denied January 10, 1955.
*666 Williams, Salomon & Katz, Miami, Sibley & Davis, Miami Beach, and Weldon G. Starry, Tallahassee, for appellants.
Ben Shepard and Bernstein & Hodsdon, Miami, for appellees.
MATHEWS, Justice.
This is a zoning case and involves the property in Miami Beach known as the "Firestone Estate". It first appeared in this Court in the case of City of Miami Beach v. First Trust Company, Fla., 45 So.2d 681.
In the Firestone case the prayer for relief sought to enjoin the defendant City from prohibiting or interfering with the use of land for the building of ocean-front hotels and apartment houses or for any other use or purpose then permitted to the property immediately adjoining it to the south or to any property within Use District RE. The Circuit Court in its order enjoining the City of Miami Beach said:
"C. That plaintiff is entitled to have, and defendant City is lawfully required to permit, any and all of uses of Lot A as are permitted in `Use District RE' and `Area District 15' under said zoning ordinance No. 289.
"D. That the defendant, The City of Miami Beach, its officials, agencies, representatives and employees are hereby permanently enjoined from asserting the validity of said ordinance as it purports to restrict Lot A to `RAA Use District' and to `Area District No. 3,' and from prohibiting or interfering with the use of Lot A for any and all purposes, and in any manner, permitted to and for other property classified under `Use District RE' and `Area District 15' in and by said zoning ordinance." (Underscoring supplied.)
The history of this property is so well set forth in the opinion in City of Miami Beach v. First Trust Company, supra, that it will be unnecessary to relate it here, except to say that the property was originally zoned in the RAA District; that is, single family dwellings which included estates. Under the final decree in the Firestone case property could be used for any purpose set forth in the RE classification.
RE District was a multiple family district. Under this classification the property could be used for hotels with 100 or more guest rooms and could contain business establishments of the BAA classification providing the exterior of the building should not contain store fronts or have the appearance of commercial or mercantile activities or any display of arts, or services, which are visible from the exterior of the building and providing that such business establishments should only be entered from within the building; that is, the hotel. BAA classification permitted any use as set forth in BAAA, therefore, when under and by virtue of the final decree, affirmed by this Court in City of Miami Beach v. First Trust Company, supra, enjoining the use of the property for any use under "Use District RE", included the uses set forth for BAA and BAAA.
The property in question consists of a tract of land lying immediately north of *667 44th Street on Miami Beach and is 700 feet in length along the Atlantic Ocean and approximately 550 feet to 570 feet in depth extending from the ocean to Collins Avenue on the West.
The property was acquired by the Charnofree Corporation on January 4, 1953, from the First Trust Company, which was the complainant in the suit above mentioned. The Fontainebleau Hotel Corporation acquired a 99-year lease from the Charnofree Corporation on December 11, 1953, and thereafter on the 29th of December, 1953, began the erection of a hotel to contain 545 rooms and baths and four 2-bedroom, 2 bath apartment units. This work was commenced upon preliminary plans and a building permit issued by the City to enable the corporation to begin the construction before complete plans were filed.
From the adoption of the Zoning Plan in 1930 until September 5, 1951, Ordinance No. 289 provided that hotels with 100 or more guest rooms might contain business establishments of the "BAA classification provided the stores are not visible outside the building and were entered from within". The BAA classification included the uses permitted in BAAA classification. The permitted uses under Ordinance 289 which included the uses set forth in BAAA contain the following:
"In the `BAAA' Modified Business District, no building or land shall be used and no building shall be hereafter erected, constructed, reconstructed or structurally altered which is designed, arranged, or intended to be used for any purpose, unless otherwise provided for in this ordinance, except for one or more of the following uses:
"1. Any use permitted in the `RE' Multiple-Family District.
"2. Banks.
"3. Modiste, wearing apparel, furriers.
"4. Millinery shops.
"5. Office, including brokerage houses.
"6. Interior decorating, costuming, draperies.
"7. Antique shops.
"8. Jewelry stores.
"9. Furniture stores.
"10. (434) (Item eliminated)
"11. Confectionery and ice cream stores.
"12. Drug stores.
"13. Stationery stores.
"14. Shoe stores.
"15. Sporting goods stores.
"16. Luggage shops.
"17. Sales and show rooms.
"18. Hotels or Apartment Houses with fifty (50) or more guest rooms, may contain or erect in conjunction as accessory buildings, business establishments of the `BAA' classification.
"19. (788) (Item eliminated)
"20. Professional Offices. (572) or other similar enterprises or businesses which are not more obnoxious or detrimental to the welfare of the particular community than the enterprises or businesses above enumerated, provided that this shall not be interpreted to include bars or bar-rooms, or restaurants, except in conjunction with Hotels or Apartment Houses of fifty (50) or more guest rooms."
On September 5, 1951, the City Council of Miami Beach adopted Ordinance 985 which purported to remove from the uses authorized in RE Districts for hotels the right to construct and use stores of the BAA classification and restricted store uses to barber shops, beauty shops, tobacco, magazine, newspaper and drug sundry shops. On August 20, 1952, the Council adopted another ordinance which added cabarets to the permitted uses and on November 4, 1953, the Council adopted Ordinance 1091, which permitted the property to be used for dance studios, dining rooms, restaurant and coffee shops.
*668 On March 8, 1954, the plaintiff offered revised plans for the lower lobby floor of the hotel for approval. The plans showed 22 store spaces which were referred to in a letter of transmittal as intended for use for business uses authorized under the permissive BAA provisions, which existed prior to the adoption of Ordinance 985 on September 5, 1951. The request for approval was denied. The complaint alleged that at the time of the entry of the aforedescribed Decree in the "Firestone case", permissive uses in "Use District RE" included the right to erect hotels and provided in Sub-Section 4 of Section 5 of said Ordinance 289 that hotels of 100 or more guest rooms might contain business establishments of the "BAA" classification provided the exterior of the building should not contain store fronts or outward appearance of commercial activity, and provided further that such businesses should only be entered from within the building.
The BAA uses included all of those used under BAAA classification; such as modiste, wearing apparel, millinery shops, jewelry stores, etc. The City denied the approval of the ground floor stores because the uses shown included the uses for BAAA classification which were covered by RE classification and that such uses had been eliminated by Ordinance No. 985 of September 5, 1951.
The complaint alleged that the amendatory ordinances restricting the use of this property were "unreasonable, arbitrary, discriminatory and unconstitutional and bear no relation whatsoever to the public health, welfare, morals or safety"; that the use permitted of shops included in the BAA and BAAA which are also included in the RE classification are universally accepted and recognized accessory uses for hotels of such size as that contemplated in this case; that at the time of the adoption of Ordinance 985 practically all of the available ocean-front property zoned for hotels had been improved and that the ordinance could only apply to a very few properties then unimproved; that prior to the effective date of Ordinance 985, a number of new, modern hotels had been erected which included within them one or more of the prohibited store uses; to-wit, Casablanca Hotel, Monte Carlo Hotel, Sherry Frontenac Hotel, Sea Isle Hotel, Saxony Hotel, Sans Souci Hotel, DiLido Hotel. Many of these hotels are in the immediate vicinity of the hotel now being constructed. The only differences are that the hotel now being constructed is the largest in the area, and it cannot have a shop opening on the inside of the hotel where such things as wearing apparel are sold, but all of the other hotels in the immediate vicinity and across the street are permitted to have shops where sales of such articles are made. The complaint also alleged that in addition to the hotels above mentioned, the Roney Plaza and the Algiers hotels permitted in the business districts contained shops for the prohibited uses and that all of these hotels would constitute the principal competitors of the Fontainebleau Hotel and that such facts constitute discrimination; that since the rendition of the final decree in the Firestone case there have been no changes in the property in question which would justify the imposition of the restricted or prohibited uses now attempted in violation of the final decree in the Firestone case.
The City claimed that the plaintiffs had acquired their rights in the property since the adoption of Ordinance 985 and that the Firestone decree created no vested rights in the plaintiffs and was not res judicata and denying generally the allegations to the effect that the amendatory ordinances were unreasonable, capricious and discriminatory.
After a protected hearing, final decree was entered which decreed that the injunctive provisions of the Firestone decree did not enjoin the enactment of the amendatory ordinances as applied to the plaintiffs and that the provisions of the ordinances were constitutional, valid and not violative of any of the plaintiffs rights. This appeal is prosecuted from that final decree.
Ordinance 289, permitting the uses for all hotels on an equal basis, remained in full force and effect until September 5, 1951, or a period of 21 years, and the Firestone *669 decree remained in effect from April 25, 1950 through September 5, 1951.
It is not suggested that the injunction in the Firestone case should remain in full force and effect forever irrespective of changed conditions. It is contended, however, that there have been no changed conditions with reference to this property and surrounding property which would justify a modification of the Firestone decree and the effect of the restrictive ordinances as to the plaintiffs and their property is to make "fish of one and fowl of the other".
The City was asked concerning physical or other changes that had taken place in this property and the surrounding neighborhood between the date of the Firestone decree and the date of the ordinance (985) and in answer thereto said:
"Answering Interrogatory No. 13 and 14, this defendant says that the same changes have taken place between September 1, 1948 and October 5, 1951 on the Firestone Estate property and in the neighborhood surrounding said Firestone Estate as took place in other property which is located in the `RE' and `REE' Districts and in the City of Miami Beach generally.
"These changes, common to the property in the `RE' and `REE' Districts and the City generally consist of the following:
"A large increase in population
"A large increase in tax assessments
"A large deal of building and construction
"The construction of a number of hotels
"The construction and operation of a number of retail shops in hotels
"Substantial growth, and increased business activity."
The case of Miami Beach Improvement Co. v. City of Miami Beach, Fla., 41 So.2d 890, was a contempt proceeding, but has considerable bearing upon the question presented in this case. A petition sought to hold members of the City Council in contempt for violating a decree which had been affirmed by this Court. See also Home Savings & Loan Association v. Mount Zion Baptist Church, 139 Neb. 867, 299 N.W. 287; Lowe v. Prospect Hill Cemetery Association, 75 Neb. 85, 106 N.W. 429, 108 N.W. 978; and 2700 Irving Park Building Corp. v. City of Chicago, 395 Ill. 138, 69 N.E.2d 827, 834, in which the Illinois Court said:
"* * * The relief here granted was directed only against the enforcement of the invalid zoning ordinances. The decree does not prevent the city from making future amendments affecting the same property if conditions should so change as to warrant a rezoning which would not be arbitrary and unreasonable. It cannot be said that the authority of the city to validly exercise its police power through the medium of amendments to the zoning ordinance will be interfered with by the injunction granted in this case. It is only the arbitrary and, therefore, invalid exercise of the zoning authority which is restrained."
As shown by this case Ordinance No. 985 of September 5, 1951, is unreasonable, arbitrary, capricious and discriminatory. No changed or new conditions are disclosed by the record which justifies a change in the use of the property in question from that permitted and required at the time of the final decree in the Firestone case. Such ordinance does not apply to all hotels alike but imposes restrictions upon the use of the hotel in question not imposed upon other hotels recently constructed and similarly situated in this immediate vicinity.
This record shows no reason or justification for withholding from the plaintiff hotel corporation the right to use this property for modiste, wearing apparel, millinery shops, jewelry stores and other uses which are granted to other hotels in the same vicinity. It is arbitrary and discriminatory to restrict such use to the plaintiff *670 hotel while permitting the same use to other hotels in the same vicinity and similarly situated.
It appears that one of the features attempted to be injected in this case is that the use of such shops in the hotel for the above mentioned purposes will have some effect upon the economic situation of similar shops on Lincoln Road. We are not concerned in this proceeding with the economic effect of competition from shops in the hotel and shops on Lincoln Road. In the case of Lippow v. City of Miami Beach, Fla., 68 So.2d 827, the City of Miami Beach was resisting an attempt to compel the rezoning of residential property just north of Lincoln Road on Meridian Avenue to a business zone. This Court stated that the "argument of the City that to rezone appellants' property to business would adversely affect the stability of business property on Lincoln Road and therefore the economic life of Miami Beach does not constitute any legal basis to uphold the action of the City."
We are more concerned with the effect of such use upon the safety, health, morals and general welfare of the community, than we are with the effect upon the economic conditions of shops on Lincoln Road. In the case of Stengel v. Crandon, 156 Fla. 592, 23 So.2d 835, 837, 161 A.L.R. 1228, this Court said:
"* * * `such restrictions must find their basis in the safety, health, morals or general welfare of the community.'"
In the case of State ex rel. Taylor v. City of Jacksonville, 101 Fla. 1241, 133 So. 114, 116, it was stated that such restrictions "find their justification only in some aspect of the police power asserted fairly and impartially in the interest of the public welfare, health, safety, and morals." See also Forde v. City of Miami Beach, 146 Fla. 676, 1 So.2d 642.
We should compare the above cases with the case of Perry Trading Co. v. City of Tallahassee, 128 Fla. 424, 174 So. 854, 858, 111 A.L.R. 463, where, with reference to improper conditions imposed on a business, this Court said:
"The doctrine is applicable to that situation where a city, under the guise of exercising the police power, imposes such limitation and burdens on conducting a legitimate business as to seriously impair the right to conduct such business where there is no question of public health, morals or safety involved."
We fail to see that the safety, health or morals of the inhabitants of the City will be affected by permitting the same uses in the plaintiff hotel corporation's property as is permitted in other hotels of the same general nature and in the same neighborhood. We fail to see how restricting the plaintiff hotel corporation from using its property for wearing apparel, modiste, millinery shops, jewelry stores and other such uses, will affect the safety, health and morals of the community while the identical use in other hotels in the same vicinity will not affect the safety, health or morals of the community.
Reversed, with directions to set aside the final decree and to enter a final decree conforming to this opinion.
ROBERTS, C.J., and TERRELL and SEBRING, JJ., concur.