GATLINBURG ART GALLERY et al.

*v.*

CITY OF GATLINBURG et al.

384 S.W.2d 9.

(*Knoxville,* September Term, 1964.)

Opinion filed November 12, 1964.

L. C. ELY, Knoxville, for Gatlinburg Art Gallery, Inc. and others.

HAILEY & WATERS, Sevierville, DONALDSON, MONTGOMERY & KENNERLY, Knoxville, for City of Gatlinburg and others.

MR. SPECIAL JUSTICE ROBERT S. CLEMENT delivered the opinion of the Court.

This suit was brought by the Gatlinburg Art Gallery, Incorporated, and its stockholders individually, against the City of Gatlinburg and the officials thereof asking that the Defendant be required to issue a license for the conduction of auction sales and for a declaratory judgment under the ordinance governing same, including certain injunctive relief. All questions have heretofore been settled and compromised by the parties except for the question of the legality of the provisions of sub-section 5-A of section 4 of said ordinance, No. 219, as amended by Ordinance No. 323, which provides as follows:

"SECTION 4. BE IT FURTHER ORDAINED that it is hereby declared to be unlawful for any auctioneer, person, firm or corporation conducting or holding a public or private auction of personal property within the City of Gatlinburg to:

"5-a. To hold any auction of the following described types of property at any time other than between the hours of 8:00 a. m. and 6:00 p. m.: jewelry, diamonds, precious or semi-precious stones or imitations thereof, watches, clocks, pictures, paintings, gold or silverware or plated ware, rugs, carpets, curios, bedspreads, table covers, tablecloths, napkins, doilies, shawls, china ware, glass ware, and porcelain ware."

The Chancellor in his memorandum opinion dismissed the bill and denied all injunctive relief sought and declared Ordinance No. 323 to be legal and constitutional. The Complainants have appealed to this Court.

Complainants insist that the regulations provided by said ordinance are unreasonable, unnecessary and void

in that it deprives Complainants of privileges enjoyed by others; that said ordinance does not apply to other types of business and that the same was passed for the sole purpose of suppressing auction sales such as Complainants operate, rather than regulating same.

The Defendants insist that as a municipality, they have the right to regulate businesses operated within the City of Gatlinburg, that many of the citizens of Gatlinburg have their life's savings incorporated in their business, that valuable property rights are at stake, that to allow auctions as operated by the Complainant to continue would give Gatlinburg a bad name, and that the clean reputable name of Gatlinburg would probably be marred by such businesses as operated by the Complainants.

The record discloses that the City of Gatlinburg is a resort town, nationally known, and particularly in the southeastern part of the United States; that said City has outstanding hotel, motel, restaurant and other facilities. That this reputation was earned through many years of planning, advertising, hard work and investments by the City and the business people of Gatlinburg; that the Defendants are interested in maintaining the City's good name, and that the Defendants have no objection to Complainant's operating their place of business in the manner as other merchants within the corpopate limits of the City.

Complainants insist that a large percentage of the business done by all merchants in Gatlinburg is during the hours from 6:00 P.M. to 11:00 P.M. and that the Complainants are being discriminated against in that the ordinance in question prohibits the operation of their business by auction after 6:00 P.M. A large number of

witnesses support this insistence, and the question that this Court must decide is does the City of Gatlinburg have the authority to regulate the type of business Complainants are operating to the extent that it would deprive Complainants of operating during the period that Complainants would probably do the most business. The items excluded for sale in the ordinance are the major items sold by Complainants.

Defendants insist that the ordinance is regulatory only and that said ordinance is necessary in order to protect the visitors to the resort town who are in a holiday mood and much more susceptible to being defrauded or deceived as to the value of articles after 6:00 P.M., and that it is necessary that the public be protected in order to avoid giving Gatlinburg a bad name and destroying property values, which is of great concern to Gatlinburg and the Defendants.

Mayor W. L. Mills testified as follows:

"Q. Not referring to these fine gentlemen of the Gatlinburg Art Gallery, but assuming under this ordinance, if there was a permit to have auctions after 6:00 o'clock and some unscrupulous auctioneer came in here and did gyp some of you people, who would get blamed for it?

"A. Gatlinburg is going to get the blame, they will have forgotten who got it, who they got it from, they are going to say they got it in Gatlinburg and that is immediately the reaction they will have, everybody will have, they are going to avoid Gatlinburg because it becomes a trap for deception.

"Q. As a member of the City Council, have you attempted to be fair with all licensees and also to protect the people of Gatlinburg?

"A. I honestly feel that we have and I have, yes.

"Q. Was that the purpose of the enactment of these particular ordinances in connection with the auction companies?

"A. Speaking for my own self, I can say the whole purpose is for the protection of our city and the people who come here."

Complainants insist that the ordinance is invalid (1) because the hours fixed are arbitrary—they do not go according to the seasons, and (2) the ordinance is too general, containing too many items.

The Complainants cite the case of *Perry Trading Company v. Tallahassee,* a Florida case reported in 128 Fla. 424, 174 So. 854. This ordinance limited the sale of certain personal property at auction to the hours from 8:00 A.M. until 6:00 P.M. just as the Gatlinburg ordinance. The ordinance was held to be unreasonable and oppressive.

Tennessee cases relied on by the Complainants include *Craig v. Gallatin,* 168 Tenn. 413, which was an ordinance attempting to close pool rooms after 6:00 P.M. This Court held this ordinance to be unreasonable and void.

Another case relied on by Complainants is *Ward v. Greeneville,* 67 Tenn.228, where the City of Greeneville attempted to prohibit the sale of intoxicating liquors during the nighttime. This ordinance was held to be invalid.

112

Numerous other cases are cited by the Complainants and Defendants from other states and there is a difference of opinion in the various states as to just how far a municipality may go in the regulation of auction sales such as is being operated by the Complainants.

The Defendants rely to a great extent on the case of *Jones v. City of Jackson,* 195 Tenn. 329, 259 S.W.2d 649. The caption of the Jackson ordinance which was upheld by this Court reads as follows:

"An Ordinance to Regulate the Manner of Holding Auctions Within the City of Jackson so as to Prevent the Defrauding of the Public; to Regulate Auctioneers; to Provide for Permits for Holding of Auctions; Manner of Applying for Same; to Declare Certain Offenses a Misdemeanor; and to Provide a Penalty for the Violation Hereof."

In the Jackson case, this Court reviewed the holdings of the courts of many states and referred to 111 A.L.R. 473, which states as follows:

" 'The general proposition that the business of auctioneering is a legitimate subject of regulation to prevent abuses and frauds, which was laid down in the annotation in 31 A.L.R. at page 299, and was also supported by the cases cited in the supplemental annotation in 39 A.L.R. at page 773, has found additional support in the following more recent cases: Alabama. —*Davidson v. Phelps* (1926) 214 Ala. 236, 107 So. 86; Arkansas.—See *Balesh v. Hot Springs* (1927) 173 Ark. 661, 293 S.W. 14; California.— [*In*] *Re West* (1925) 75 Cal.App. 591, 243 P. 55; Florida.—*Levy v. Stone* (1929) 97 Fla. 458, 121 So. 565; Georgia.—*Clein v. Atlanta* (1927) 164 Ga. 529, 139 S.E. 46, 53 A.L.R. 933;

Indiana.—*Gordon v. Indianapolis* (1932) 204 Ind. 79, 183 N.E. 124; Kentucky.—*Com. v. Loeb* (1932) 245 Ky. 843, 54 S.W.2d 373; Michigan.— *Saigh v. Petoskey* (1930) 251 Mich. 77, 231 N.W. 107; Mississippi.— *Matheny v. Simmons* (1932) 165 Miss. 429, 139 So. 172; New Jersey.—*Wagman v. Trenton* (1926) 102 N.J.L. 492, 134 A. 115; Wisconsin. — *Doering v. Swoboda* (1934) 214 Wis. 481, 253 N.W. 657.'

"In *City of San Antonio v. South Trunk Co.,* Tex.Civ. App., 13 S.W.2d 401, the court had under consideration the validity of an ordinance of the City of San Antonio regulating, among other things, the sale of trunks by auction. This ordinance also proposed to regulate the auction sales of jewelry, pictures, painting, rugs, trunks, suitcases, etc., but should not apply to judicial sale or sales by trustees, etc.

"Practically all of the courts that have passed on what are called 'jewelry auction ordinances' have upheld them. *Davidson v. Phelps,* 214 Ala. 236, 107 So. 86; *Ex parte West,* 75 Cal.App. 591, 243 P.55; *Mogul v. Gaither,* 142 Md. 380, 121 A. 32."

In the same opinion, the Court, speaking through the late Chief Justice Prewitt, said:

"We have considered the case of *Perry Trading Co. v. City of Tallahassee,* 128 Fla. 424, 174 So. 854, 111 A.L.R. 463, holding invalid an ordinance such as the one now before us but we are of the opinion that the Texas case supra is the sounder view."

In the case of *Motlow v. State,* 125 Tenn. 547, 145 S.W. 177, this Court reviewed the existing conditions under which the law under consideration was passed. Therefore, we think it proper to discuss the history of Gatlin-

burg and conditions reflected by the record when Ordinance No. 219, as amended by Ordinance No. 323, was enacted.

Lying in the foothills of the Great Smoky Mountains in Sevier County of East Tennessee, Gatlinburg is one of the most unique towns in the United States. Incorporated in 1945, the population of Gatlinburg is only 1,764. However, the size of the town is not indicative of the business done in Gatlinburg and the tourists accommodated during the season. As evidence of its rapid growth as a resort town, one witness testified:

"Twenty years ago I plowed corn right where Main Street is."

Thus, it can be seen that this resort town has had a phenomenal growth.

The record reveals that unlike most other towns, Gatlinburg depends almost entirely on visitors for its existence and there is testimony in the record that from 10,000 to 15,000 people can be cared for overnight in the hotels, motels and private lodging quarters within the area. Unlike the tourist who spends the night and moves on to his destination, many people have reached their destination when they arrive in Gatlinburg, where the average stay is from 2½ to 3 days. The record reveals that from two and one-half to three million people visit Gatlinburg during the season. Estimate of the investment of private capital in hotels and motels is set at from $40,000,000 to $50,000,000. According to the City Manager, the City has spent $5,000,000 for improvements within the past few years.

Gatlinburg has only on thing to sell and that is hospitable service, the type of service visitors will be pleased

with and who will go back home and tell their friends about the beauties of the Great Smokies and the fine service and kind treatment they received at Gatlinburg.

People are inclined to judge a town, or even a state, by the acts of a few individuals; and in some cases, even one transaction may embitter an individual against a community although there were many other transactions which were entirely satisfactory. The record is replete with testimony of the governing body of the City of Gatlinburg and other witnesses that they fear that incidents may occur in the conduction of the auction sale as conducted by Complainants which will reflect upon the town of Gatlinburg, and even though the Complainants guarantee satisfaction, or your money refunded, no one knows, and the record does not reflect, the number of people who, in the silence of their room after the chanting of the auctioneer has ceased and the pressure of the floormen in the presence of a great crowd is no longer with them, feel that they have paid entirely too much for some article, but they are too proud to ask for the return of their money, and inwardly they feel that they have been defrauded.

Despite the insistence of Complainants that satisfaction is guaranteed with every sale, Complainants' own testimony relative to the number of refunds actually made is an indictment against this type of business where laymen and women who know nothing about the items being offered, and especially diamonds and other jewelry, are pitted in the arena with admitted experts, and who, amid the noise of the crowd and the pressure of the expert floor-workers, are likely to go beyond their better judgment in bidding on the merchandise. The question which remains unanswered is, "How many buyers are

overreached at such sales and are dissatisfied, disappointed and disgusted, but who elect to hold their peace rather than go to the trouble of seeking a refund which could entail possible embarrassment?''

In the case of *Spencer-Sturla Company v. Memphis,* 155 Tenn. 70, 290 S.W. 608, this Court held:

"In making classifications of persons or property for the application of statutes or ordinances enacted in the exercise of the police power, the legislative department of the state government is uniformly held to be vested with a broad discretion.''

In the case of *Meador v. Nashville,* 188 Tenn. 441, 220 S.W.2d 876, it is stated:

"In whatever form presented, ultimately the question for judicial determination is the same, to-wit: Does the zoning ordinance in question have any reasonable connection or relation with the protection of public safety, health, morals and natural well being of the people?''

In *Jones v. City of Jackson,* supra, we find the following statements and citations with reference to regulating businesses by municipalities:

"(3) An ordinance is not invalid merely because it regulates a lawful business and due process of law is not denied when an ordinance fairly and reasonably regulates a lawful business.''

"(5-8) Complainant's statements in his bill that the ordinance is not valid is not supported by statements of specific facts from which complainant might draw such a conclusion and in the absence of further statements of specific facts justifying the conclusions there-

in, such statements are insufficient to evoke the aid of a court of equity, as is here sought.''

This Court believes that this case should be considered on the record before us and under the conditions existing in Gatlinburg at the time of the enactment of the ordinance in question. We believe that Ordinance No. 219 as amended by Ordinance No. 323 under the authorities cited has a reasonable connection with the moral and natural well-being of Gatlinburg and its citizens and that the City has the power to regulate same.

After reviewing all of the authorities cited, the Court finds that the Supreme Court of this State has heretofore, by its holding in *Jones v. City of Jackson,* supra, aligned itself with the Courts from other states which uphold restrictions on the hours of auctions of certain personal property.

Therefore, we hold that the ordinance in question as amended is reasonable and is not discriminatory nor oppressive, and that the Chancellor reached the right conclusion in upholding the validity of said ordinance. It, therefore, follows that the decree of the Chancellor is affirmed.

The costs of the appeal are adjudged against the Complainants. . . .