Argued October 23, 1930; affirmed January 13; rehearing denied February 10, 1931

## KORBER *v.* CITY OF PORTLAND ET AL.
(295 P. 203)

*Frank S. Grant,* City Attorney, and *James West,* Deputy City Attorney, both of Portland, for appellants.

*Edward J. Brazell* and *Richard Sleight,* both of Portland, for respondents.

BELT, J. This is a suit to test the validity of ordinance 57412 of the city of Portland, which prohibits auction sales of jewelry. We adopt the opinion of the learned trial court, eliminating therefrom certain parts not material to questions presented on this appeal:

"Plaintiff, doing business under the name of Alder Jewelry Company at 263 Morrison street, Portland, Oregon, seeks a restraining order against the municipal authorities to prevent interference by the municipal authorities with his right to conduct a closing out auction of his stock of jewelry.

"Plaintiff alleges that for the past seventeen years he has conducted the business of merchandising diamonds, watches, jewelry and silverware, and, that by reason of poor health, he desires to retire from business, and for that purpose desires to hold an auction of his goods and sell the same as quickly as possible.

&ast;  &ast;  &ast;  &ast;  &ast;

"Plaintiff contends that ordinance No. 57412, now in effect, is void in that it is in conflict with article I, section 20, of the Constitution of Oregon, and also that it abridges the rights of citizens of the United States, contravening the provisions of article XIV of the amendments to the Constitution of the United States.

"The answer is a general denial.

&ast;  &ast;  &ast;  &ast;  &ast;

"The ordinance provides: 'It shall be unlawful for any person &ast; &ast; &ast; to sell, dispose of, or offer for sale in the City of Portland at public auction any platinum, gold, silver, plated ware, precious or semiprecious stones, watches or other jewelry, whether the same be their property, or whether they shall sell or offer the same for sale as agents, factors or employees of others,' and that any person violating the provisions of this ordinance shall, on conviction thereof in the municipal court, be punished by fine not exceeding $500, or by imprisonment in the city jail for a period of not exceeding six months, or by both such fine and imprisonment. The ordinance so passed on the 23d of October, 1929, repeals certain sections of the then existing ordinance No. 40468.

"The practice of conducting auctions is of ancient origin. We find that it originated with the Romans in the disposition of military spoils, and the auction was

conducted 'under the spear'. On such occasions the spear was stuck in the ground. This practice has passed away as to the spear, but the method of sale by auction continues. Later another mode of sale by auction came into practice, called the 'sale by the candle' or 'by the inch of candle'. This arose from the use of candles as a means of measuring time. It was declared the goods could be continued to be offered to bidders for so long a time only as would suffice for the burning of one inch of candle. When the measure was wasted to that extent the highest bidder was then declared to be the purchaser. There is another method of auction called a 'Dutch' auction, indicating the origin of the practice, and this consists in the public offer of the property at a price beyond its value, and then gradually lowering the price until someone becomes a purchaser.

"The authorities all hold that when rightly conducted, the business of selling goods by auction is legitimate and useful and an important line of merchandising.

"Tiedeman's 'Limitations of the Police Power,' § 102, among other things, says:

" 'In what proportion to the severity or extent of the police power must a strict observance of the constitutional limitations upon the police power be required? The test in every case is: Is the prohibition of a particular business of the sale of a particular article necessary to prevent the infliction of a public injury? It is not sufficient that the public sustains harm from a certain trade or employment as it is conducted by some engaged in it. Because many men engaged in the calling persist in so conducting the business that the public suffers and their acts cannot otherwise be effectually controlled is no justification for a law which prohibits an honest man from conducting the business in such a manner as not to inflict injury upon the public * * * Where it is possible to conduct a business without harm to the public, all sorts of police

regulations may be instituted which will tend to suppress the evil. A rigid system of inspection may be provided, and it may be made a condition of the license that it shall be revoked in case the licensee violates the local law. Thus the public may be protected from the acts of a violator of the law, while, at the same time, honest men may be protected in their right to pursue an innocent calling.'

"Justice McReynolds, in the case of *Adams v. Tanner*, 244 U. S. 594 [37 S. Ct. 662, 61 L. Ed. 1336, L. R. A. 1917F, 1163, Ann. Cas. 1917D, 973], says:

" 'Because abuses may and probably do grow up in connection with this business (referring to employment agencies) is adequate reason for hedging it about by proper regulations. But this is not enough to justify the destruction of one's right to follow a distinctly useful calling in an upright way. Certainly, there is no profession, possibly no business, which does not offer peculiar opportunities for reprehensible practices; and, as to every one of them, no doubt, somebody can be found quite ready earnestly to maintain that its suppression would be in the public interest. Skillfully directed agitation might also bring about apparent condemnation of any one of them by the public. Happily for all, the fundamental guaranties of the Constitution cannot be freely submerged if and whenever some ostensible justification is advanced and the police power is invoked.'

"In the case of *Allgeyer v. Louisiana,* 165 U. S. 578 [17 S. Ct. 427, 41 L. Ed. 832], the Supreme Court held invalid a statute of Louisiana which undertook to prohibit a citizen from contracting outside the state for insurance on his property lying therein because it violated the liberty guaranteed to him by the Fourteenth Amendment, and the court said:

" 'The liberty mentioned in that amendment means not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of

the citizen to be free in the enjoyment of his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary and essential to his carrying out to a successful conclusion the purposes above mentioned.'

"It is not contended on behalf of the plaintiff that the city has not the right to regulate, license or tax the sales of jewelry by auction, but he does maintain that the fundamental law of the state and the union guaranteed to him as the owner of a jewelry store the right to dispose of his stock at auction, subject only to the right of the city to pass reasonable police regulations pertaining to the conduct of such sale, and that a prohibition of this right to sell at auction has no reasonable relation either to the public health, morals, safety or welfare, for the reason that such prohibition cannot be sustained as a measure to prevent deception, because deception may be avoided by regulation.

"The former ordinance, namely, No. 40468, was patterned after the Cleveland ordinance, and which ordinance was declared by the Supreme Court of Ohio, in the case of *Holsman v. Thomas,* 112 Ohio St. 397 [147 N. E. 570, 39 A. L. R. 760], to be constitutional and did not prohibit the sale of the jewelry by auction. It allows such sale for a limited period of time during each year, and regulates the conditions under which such sale by auction may take place. But the ordinance now under construction absolutely prohibits sales by auction.

"The Supreme Court of this state, in the case of *State v. Hume,* 52 Or. 1 (95 P. 808), announces this doctrine:

" 'All occupations, professions and trades that may be legally pursued, are necessarily subject to such

reasonable regulations as the state may impose, in respect to the time, place, or manner of enjoyment, in order to promote the greatest good to the greatest number of its citizens. * * * It may be stated as a general principle that all property in a civilized community is held subject to the rule that it cannot be used in such a manner as to injure others, and when this elementary proposition is violated, the state in exercising its police power can correct the evil. As a deduction from the postulates asserted, it necessarily follows that while the state may regulate all legitimate occupations, trades, etc., it can not, under any pretended exercise of its police power, prohibit persons from pursuing such callings.'

*     *     *     *     *

"The defendant cites in support of the right to prohibit, a Minnesota case, namely, *State v. Bates,* 101 Minn. 301 [112 N. W. 67]. However, the Supreme Court of Minnesota in a later case, namely, *Wright v. May,* 127 Minn. 150 [149 N. W. 9, L. R. A. 1915B, 151], announces the following rule:

" 'It is conceded that the business or calling of an auctioneer is one that is subject to legislative regulation. It is equally true, on the other hand, that the business is a lawful and useful one' (citing cases). 'The right to regulate and license the business of auctioneering does not include the right to prohibit. * * * However, the right of the individual to engage in the business may not be taken from him under the guise of regulation.'

"In the case of *State of Wisconsin v. Redmon,* 134 Wis. 89 (114 N. W. 137 [14 L. R. A. (N. S.) 229, 126 Am St. Rep. 1003, 15 Ann. Cas. 408], Justice Marshall, in discussing the police power of the state, learnedly distinguishes the judicial from the legislative function in reference to the police power, and the syllabus is as follows:

" 'It is a judicial function to determine the proper subjects for police regulations, and a legislative func-

tion to determine, primarily, the expediency of regulation and the character thereof subject to judicial supervision to the extent of determining, in cases as they arise, whether the boundaries of reason have been so clearly exceeded as to violate some constitutional prohibition, express or implied; the judgment of the legislature being controlling unless it appears beyond reasonable controversy that the interference is unreasonable.

" 'A legislative declaration respecting the character of the law, as that its purpose is to promote public health, is not absolutely binding on the courts. It is their function to determine the real intent of the law, and if its ostensibility is not the real purpose, to give effect to the constitution by condemning the enactment.'

"In the case of *Chicago v. Netcher,* 183 Ill. 104 [55 N. E. 707, 48 L. R. A. 261, 75 Am. St. Rep. 93], an ordinance was being considered prohibiting the sale of any meats, fish, butter, cheese, lard, or vegetables where dry goods, clothing, jewelry and drugs are sold, and it was held that the ordinance does not provide a regulation of the sale of provisions, but makes an arbitrary prohibition of such sales where certain other goods are sold. Quoting from the syllabus:

" 'The constitutional guaranties of liberty and the protection of property rights are violated by an arbitrary prohibition of the sale of provisions where dry goods, clothing, jewelry and drugs are sold, since such a prohibition is not an exercise of the police power.

" 'In order to sustain legislative interference with the business of the citizen by virtue of the police power it is necessary that the act should have some reasonable relation to the subjects included in such power.'

"And the court in its opinion says:

" 'But this ordinance does not regulate the business of selling provisions, nor prescribe the manner in which the business shall be carried on. It merely pro-

hibits the persons engaged in the business of selling dry goods, clothing, jewelry and drugs from selling in their stores the provisions enumerated in the ordinances * * * this is not a *regulation* but a *prohibition,* and a purely arbitrary one, which attempts to deprive certain persons of exercising a right which has always been lawful, and has been heretofore exercised throughout the state and country without question.'

"In the case of *Weaver v. Palmer Brothers,* 270 U. S. 402 [46 S. Ct. 320, 70 L. Ed. 654], we find an announcement of the limit of the power of the legislature to prohibit when regulation could serve the purpose sought to be accomplished.

" 'Legislative determinations are entitled to great weight; but it is always open to interested parties to show that the legislature has transgressed the limits of its power. A state law forbidding the use in comfortables, of shoddy, even when sterilized, is so far arbitrary and unreasonable that it violates the due process clause of the Fourteenth Amendment.'

"In the case of *Dornberg v. City of Spokane,* 125 Wash, 72 [215 P. 518, 31 A. L. R. 295], the court says:

" 'An ordinance prohibiting the sale of property at auction within a prescribed portion of the business section of a municipality is unreasonable and void.'

"In the case of *Tolliver v. Blizzard,* 143 Ky. 773 [137 S. W. 509, 34 L. R. A. (N. S.) 890], the court, in referring to an ordinance prohibiting the sale, conduct or operation of a place for the sale of soft drinks, says:

" 'While it is true that the above section contains a broad grant of police power, it by no means follows that such power is unlimited. The rule is, that in order to sustain legislative interference with the business of the citizen, by virtue of the police power, the act or ordinance must have some reasonable relation to the subjects included in such power.'

"Justice Lamar, in the case of *Murphy v. California,* 225 U. S. 623 [32 S. Ct. 697, 56 L. Ed. 1229, 41 L. R. A. (N. S.) 153], announces the rule:

" 'The Fourteenth Amendment protects the citizen in his rights to engage in any lawful business, but it does not prevent legislation intended to regulate useful occupations which, because of their nature or location, may prove injurious or offensive to the public; neither does it prevent a municipality from prohibiting any business which is inherently vicious and harmful. But between the useful business, which may be regulated, and the vicious business, which can be prohibited, lie many nonuseful occupations which may or may not be harmful to the public, according to local conditions or the manner in which they are conducted.'

"Justice Moore, in the case of *White v. Holman,* 44 Or. 180 [74 P. 933, 1 Ann. Cas. 843], says:

" 'The degree of danger to the public is the measure of the remedy which the state may adopt to mitigate or prevent injury to its citizens. If the employment is only incidentally hurtful, it may be regulated by license, but if it is necessarily pernicious it may be entirely prohibited.'

"It seems to the court, after a survey of the authorities, that the business of vending jewelry is not inherently and necessarily pernicious, and the test that Justice Lamar outlines, when applied to the instant case, clearly demonstrates the distinction that must be constantly kept in mind.

"The court is of the opinion that the record discloses the fact that the plaintiff made a bona fide application for a license for closing out auction, and was ready and able to comply with all the requirements and was prevented from such application by a

refusal on the part of the proper city authorities to receive the same, and that a further performance on his part would have been a vain and idle act.

"This is the finding on the first contention.

"As to the second, the court is forced to the conclusion that this ordinance, in so far as it prohibits the lawful calling, such as conducting an auction under proper regulation, is invalid in accordance with the reasoning hereinbefore announced."

The decree of the lower court is affirmed.