## Commonwealth v. Loeb.

## Same v. Marks.

(Decided Nov. 15, 1932.)

844

BAILEY P. WOOTTON, Attorney General, H. HAMILTON RICE, Assistant Attorney General, and PETER, LEE, TABB, KRIEGER & HEYBURN for appellant.

GROVER G. SALES for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

These cases involve the validity of sections 2 and 3 of an ordinance of the city of Louisville entitled: "An Ordinance regulating the sale at public auction of tangible personal property to consumers." They were heard together in the trial court and here. The lower court found that sections 2 and 3 of such ordinance were invalid, and from that judgment this appeal is prosecuted.

As its title states, the ordinance is designed to regulate the sale of personal property at public auction in the city of Louisville. Section 1 of the ordinance forbids any person, firm, or corporation from selling, disposing, or offering for sale at public auction in the city of Louisville any tangible personal property, whether his own or that of another, except in the manner prescribed by the ordinance.

Section 2, which is attacked, provides:

"No retail or wholesale merchant shall sell or offer for sale at public auction, to consumers, any of his stock of goods on hand unless he has been engaged in such business in the City of Louisville continuously for at least one year next preceding such sale, and such public auction shall be held at a place where such merchant shall have been engaged in such business for at least ninety (90) days immediately preceding such sale."

The rest of the section provides for the obtention of a license, the payment of a license fee, and the execution of a bond, and prohibits the sale at such auction of any goods other than those owned by the merchant.

Section 3 of the ordinance, also attacked, provides:

"Licensed pawnbrokers may sell at public auction their unredeemed pledges in the manner provided for by law at their regular licensed place of busi-

ness only and shall not sell unredeemed pledges of anyone else. Auction sales conducted by such pawnbrokers to dispose of unredeemed pledges shall be held on successive days, Sundays and legal holidays excepted, and shall not continue for more than a thirty (30) day period at any one time, and sixty (60) days shall elapse between ending of any such period and the beginning of another."

Section 4 provides for the tagging of articles offered at auction, giving a description of the character and quality of the goods offered for sale, together with other details not here material. Section 5 is aimed at the prevention of by-bidding. Section 6 provides for the details of the bond referred to in section 2. Section 7 provides the penalties for the violation of the ordinance. Section 8 exempts from the provisions of the ordinance judicial sales, sales by executors or administrators, and sales by persons other than merchants or pawnbrokers of their personal or household effects. Section 9 provides that, if any section or parts of sections of the ordinance shall be declared void, that shall not operate to invalidate any other provision, section, or part of the ordinance. Section 10 provides for the repeal of inconsistent ordinance.

The general principle by which this case must be decided is not in dispute. It is settled that the business of selling by auction is subject to reasonable regulations by the state or municipality under its police power, and the question in each case is whether or not the regulations provided by the state or municipality are reasonable. Biddles v. Enright, 239 N. Y. 354, 146 N. E. 625, 39 A. L. R. 766; Mogul v. Gaither, 142 Md. 380, 121 A. 32; Holsman v. Thomas, 112 Ohio St. 397, 147 N. E. 750, 39 A. L. R. 760; Carrollton v. Bazzette, 159 Ill. 284, 42 N. E. 837, 31 L. R. A. 522; People v. Gibbs, 186 Mich. 127, 152 N. W. 1053, Ann. Cas. 1917B, 830; Miller v. City of Greenville, 134 S. C. 314, 132 S. E. 591, 46 A. L. R. 155; Dusenbury v. Chesney, 97 Fla. 468, 121 So. 567, 569. It is in the application of this principle to the situation here presented that the parties sharply differ. Addressing ourselves to section 2 of the ordinance, we find that it is applicable, first, to all retail and wholesale merchants, and, secondly, to all classes of personal property which may be sold by a retail or wholesale merchant. A sale by auction of any such property by any such merchant is forbidden unless such

merchant shall have been in business at least one year next preceding such auction and unless such auction be conducted where the merchant has been in business for at least 90 days immediately preceding such sale. We have no hesitancy in holding unreasonable the provision that the sale must be conducted in a place where the merchant shall have been in business for at least 90 days preceding the sale. Of course, the purpose of this section is to protect the public from fraud too often practiced by itinerant merchants, irresponsible people who come to a town at a certain period of the year, remain a short while, sell their goods, and are gone. But, in the effort to obtain that object, this ordinance goes so far as to prevent a merchant who may have been in business for a number of years in Louisville, but who through some fortuitous circumstance has been compelled to change his place of business, from conducting an auction sale until he shall have been in his new place of business at least 90 days. It would also prohibit those established merchants whose business is conducting auction sales of their goods throughout the year from moving their places of business save under a penalty of suspension of such business for a period of 90 days. As well said in appellee's brief:

"There are a great many merchants now holding auction sales to stimulate sales. Furniture stores have been holding them. Everyone concedes that an auction sale is a perfectly legitimate and proper way of disposing of merchandise. They can be properly conducted, and in many instances they are properly conducted. But surely the place where the auction is held is a matter of entire indifference, except to competing merchants and these have no right to complain. Everyone knows that we have fake clearance sales and fraudulent liquidating sales by regular retail merchants. Against such sales the public has no protection but the Better Business Bureau and its own common sense. Auction sales, on the other hand, are regulated by law because of the nature of the transaction. The haste with which the article is sold, the competitive spirit between buyers—all these make proper the requirements of a special license, a special tag and a special bond. But a requirement that a resident of Louisville may not move his auction location or open a branch auction house, or sell his goods at one place rather than another is so unreasonable

and arbitrary and illogical with reference to the public protection that it leads one to the belief that this ordinance was sponsored, in part at least, for the purpose of eliminating auction competition.''

We are further of the opinion that the requirement of this section 2 of the ordinance that the merchant, before he is authorized to conduct an auction sale, must have been in business for at least one year, is likewise unreasonable. It is true that such a provision as to auction sales of gold, silverware, and jewelry has been upheld in the Maryland case of Mogul v. Gaither, supra, and the Ohio case of Holsman v. Thomas, supra, but, as well said in the Florida case of Dusenbury v. Chesney, supra, where an ordinance applicable to auction sales of all classes of merchandise was involved, in distinguishing the Maryland case supra:

"Auction sales of the latter class of merchandise (gold, silverware and jewelry) are usually recognized as affording a reasonable basis of independent classification in the exercise of the regulatory police power for the purpose of preventing fraud and deception.''

However, here, as in the Florida case, the ordinance is applicable to all kinds of personal property, not only to that which is peculiarly subject to fraudulent or deceptive auction sales, such as jewelry and silverware, but also to that concerning which any complaining of fraud or deception is rarely if ever heard, and the sale of which by auction is rarely if ever conducted by itinerant merchants. To assure the public of the bona fides of the sale and the responsibility of the merchant, the state or municipality can prescribe a reasonable period of time for sales in ordinary course prior to auction sales, the reasonableness of which time may perhaps be different as to different classes of property, depending on the inherent or known evils connected with auction sales of such property. But a blanket prohibition for a year applicable to all classes of property, such as we have here, is unreasonable. It would prevent a bona fide merchant who is dealing in property concerning auction sales of which fraud or deception is practically never heard from holding such sale to clear his stock, or to liquidate his affairs, even though say six months had elapsed since he had entered upon his business. The scope of the prohibition is too broad, and so, unreasonable. We do not regard the other provisions of section

2 as unreasonable, nor indeed is it argued that they are.

Coming to section 3, we are also of opinion that, in so far as it prohibits licensed pawnbrokers from selling their unredeemed pledges at any place except at their regular licensed place of business and confining their auction sales to 30-day periods with lapses of 60 days between such auction sales, it too is unreasonable. So far as the place where the unredeemed pledges are sold, no reason is pointed out how such a prohibition as we have here serves to prevent fraud or deception. The regulation of these auction sales is under the police power—to protect the public from fraud and deception and from irresponsible merchants. The place where the pledge is sold has no relation to any of these ends. Nor does the periods within which these sales may be conducted as herein set out have any such relation. Section 3790 of the Kentucky Statutes gives to any pawnbroker the right to sell any article pawned after the expiration of 90 days from the maturity of the loan. The statutory right thus given to sell unredeemed pledges by any method known to business should not be circumscribed unless clearly in the interest of the public welfare.

It follows from what we have said that the judgment of the lower court is correct, and it is affirmed.