Lewis B. Hagerman and Herman Sparber, Respondents, v. City of St. Louis, a Municipal Corporation, Joseph T. Hayden, License Collector of the City of St. Louis, Missouri, Jeremiah O'Connell, Chief of Police of the City of St. Louis, Missouri, and John M. Dalton, Attorney General of the State of Missouri, Appellants, No. 44557—283 S. W. (2d) 623.

Division Two, September 12, 1955.

Motion for Rehearing or to Transfer to Banc Overruled and Opinion Modified on Court's Own Motion, November 14, 1955.

*Samuel H. \_ berman,* City Counselor, *Charles J. Dolan,* Associate City Counselor and *Thomas F. McGuire,* Assistant City Counselor, for appellants.

*John Grossman* for respondents.

[624]   BOHLING, C.—Lewis B. Hagerman and Herman Sparber, licensed auctioneers of the city of St. Louis, instituted this action for a

declaratory judgment and injunctive relief to test the constitutionality of St. Louis ordinance provisions regulating the "retail auction sales of jewelry, watches, clocks or silverware." The trial court held the provisions unconstitutional and void. The plaintiffs pleaded that the questioned ordinance provisions contravene § 40(30), Art. III, Mo. Const. 1945, prohibiting special laws (the section applies to city ordinances—McKaig v. Kansas City, 363 Mo. 1033, 256 S. W. 2d 815, 816[2]), and § 1, 14th Amend., U. S. Const., (sic) : "which, among other things, provides that no state shall make or enforce any law which shall deny to any persons within its jurisdiction the equal protection of the laws". The city contends said provisions are a valid exercise of its police power. The case is of first impression.

The provisions here involved are §§ 19—24 of ordinance 46591, approved April 10, 1953, amending Chapter 7, §§ 1—20, Revised Code, City of St. Louis, 1948, p. 237, relating to Auctions and Auctioneers. Certain of said §§ 1—20, which plaintiffs comply with and do not question, are material to the instant issues. Judicial sales or sales by executors or administrators are specifically exempted from certain provisions. Sections 6—11, 14, and 18 are immaterial here. We quote or state the substance of the material provisions.

Section 1 defines certain terms: (a) *Auction crier*. One who assists a public auctioneer. "(b) *Fill in stock*. Merchandise added to the stock on hand with the intention of selling it at public auction. (c) *Public auctioneer*. Any person who shall arrange for the disposal of any goods, wares, merchandise, fruits, stocks, bonds and other securities, livestock or other personal property, or any real estate * * in any building *. *, or in any other place in the city at public offering * *, either in person or by duly employed and licensed auction criers * *. (d) *Stock on hand*. Any merchandise that a merchant usually and ordinarily carries throughout the year" and not acquired for sale at public auction.

Section 2 requires a license as a public auctioneer to auction "any property, whether the same shall be his own property or the property of others."

Section 3. Applicants for license as public auctioneer must state in writing, among other things, the length of time of residence in Missouri and in the city as a licensed auctioneer or crier, or retail or wholesale merchant; the auctions conducted in the city within two years; a general description of the merchandise to be auctioned, its owner and place of the auction.

Section 4 authorizes, upon proper application, the issuance of a license if the applicant has been a resident of the state and continuously engaged in business in the city for one year next prior to the application as a licensed public auctioneer, or licensed auction crier, or as a retail or wholesale merchant; gives other information required by the license collector, pays the license fee, and gives an approved bond.

Section 5 requires the applicant to tender a $3,000 bond before any license be issued to a public auctioneer, with a surety company authorized to do business in Missouri as surety; said bond to be payable to the city and conditioned upon the principal paying all losses and damages occasioned by any material misrepresentation of fact or belief or any suppression of fact concerning any property sold at auction or any violation of said Chapter 7.

Section 12. The license collector may investigate any part or all of the property before or after issuing the auctioneer's license.

"Section 13. *False statements by auction crier.* It shall be unlawful for any person acting as auction crier to make any statements which are false in any particular, or which have a tendency to mislead any person present, or to make any misrepresentation as to the quality, quantity, character, [625] present condition, value, cost, general selling price, or whether new or secondhand of any property offered for disposal by auction sale." Auction criers may not sell any "fill in" article without first stating such fact in a clear audible voice to all persons present.

Section 15 makes it unlawful to auction any "fill in" article unless every advertisement of the auction clearly and unequivocally states that fill in merchandise has been added to the "stock on hand."

Section 16 requires the owner of auctioned property to give every purchaser at a price of $2.50 or more "an invoice, containing a full description of the article, its selling price and a statement giving each and every warranty under which the article was sold."

Section 17 provides for the revocation of any license for cause.

Section 19 prohibited "any retail auction sale of jewelry, watches, clocks or silverware at any time during the month of December."

Section 20 was the penalty section.

On November 13, 1951, § 19, supra, prohibiting the sale of jewelry etc. during the month of December, was held to contravene § 40(30), Art. III, Mo. Const., and the 14th Amend., U. S. Const. in Morgans Credit Jewelry Company, Inc. v. City of St. Louis, et al., in the Circuit Court of the City of St. Louis, which judgment became final.

Thereafter, on April 10, 1953, ordinance 46591, relating to "retail auction sales of jewelry, watches, clocks and silverware," was passed. (For convenience, unless otherwise indicated the word "jewelry" refers to jewelry, watches, clocks or silverware.) It amended said Chapter 7 by repealing §§ 19 and 20, supra, and adding §§ 19—25 to said Chapter. Section 25 re-enacted the penalty provisions. Sections 19—24, here in controversy, are to the following effect.

Section 19 makes it unlawful to conduct "any retail auction sale of jewelry, watches, clocks or silverware, at any time during the months of June and December in any year."

Section 20 makes it unlawful to conduct "any retail auction sale of jewelry * *, unless the person or firm whose stock is being offered for

sale at auction shall have been in the retail jewelry * * business at the location and in the premises at which said auction sale is to be cried for at least one year next before the commencement of the said auction sale, and shall not have conducted an auction sale at any time within said one year period at said location or on said premises.''

Section 21 makes it unlawful to conduct a ''retail auction sale of jewelry * * over a period of more than 15 days,'' and ''between the hours of 6 p.m. and 8 a.m. the following day.''

Section 22 requires ''the auctioneer or crier,'' before commencing any retail auction sale of jewelry, to ''make a complete and accurate inventory'' of each and every article to be offered for sale at the auction and file the same with the license collector; and to ''mark each and every article'' to be offered for sale at the auction ''by some band or tag'' identifying and describing ''each article by carat weight, percentage of purity, kind of metal or plating, weight and quality and color of stones, number of jewels and adjustments of watches, and whether they be new or used articles.'' The inventory aforesaid ''shall not exceed in value the average inventory of the'' owner of the stock ''for the 12 months next preceding the said auction.''

''Section 23. Any retail auction sale of jewelry * * shall cease and end upon the sale * * of the stock of goods listed and marked according to Section 22 * *, and * * shall not, under any circumstances, be conducted * * for a longer period than 15 days.''

''Section 24. It shall be unlawful * * to add to or increase the stock offered for sale as listed and marked in accordance with Section 22 * *, in any manner, and fill in stock of any nature, kind or character shall be prohibited.''

The city summarizes the restrictions as follows: (1) Retail auctions of jewelry are unlawful unless the jeweler has been in the [626] retail jewelry business in the premises of the auction for at least one year. § 20. (2) That no such auction has been conducted upon said premises for at least one year. § 20. (3) The auctioneer shall make an accurate inventory of every article to be offered for sale and file the same with the license collector. § 22. (4) Such auction sale shall not be conducted for more than 15 days. §§ 21, 23. (5) No such auction shall be conducted between 6 p.m. and 8 a.m. § 21. (6) The auctioneer is required to mark or tag each and every article subject to sale describing its carat weight, percentage of purity et cetera. § 22. (7) The said inventory shall not exceed in value the average inventory of the jeweler for the previous 12 months. § 22. (8) Fill-in stock is prohibited. §§ 24, 23. (9) Retail auction sales of jewelry are unlawful in the months of June and December. § 19.

Plaintiff Lewis B. Hagerman had been in business in St. Louis as a merchandise broker and licensed auctioneer for seven years. He posted the required bond, the Bankers Indemnity Company being surety thereon. He had a store where he had seats for his customers and

displayed general merchandise of all sorts, mainly radios, televisions, washers, ironers, small electrical appliances, jewelry, watches, rugs et cetera. He conducted auctions on Mondays, Wednesdays and Saturdays, mostly between 7 p.m. and 11 p.m. but sometimes until 12 m. The merchandise sold varied with the seasons of the year but he estimated that 30% of his annual sales might be classified as jewelry. He sells costume jewelry but does not sell "precious" stones. When he sought to renew his license in May, 1953, he was asked if he was going to sell watches or jewelry during June, and upon answering in the affirmative, the license collector stated he could not obtain a license because the ordinance prohibited the auction of jewelry in the month of June. He acquires merchandise when distributors or dealers experience financial difficulties. He makes purchases at less than wholesale cost. He mentioned the purchase of watches for about $29 that retailed at $92.50 and which he auctioned for from $33 to $40.

Mr. Hagerman testified one could not afford to lease premises, advertise its location, and prepare to auction merchandise, jewelry, et cetera if limited to an auction sale of 15 days or less annually, as provided in §§ 21 and 23 of the ordinance.

He explained it was impractical to comply with the provisions of §§ 22—24 with respect to the merchandise sold. Patrons would not attend an auction to bid on, say, only twenty-five standard items day after day or week after week. As full a line of merchandise as possible is needed. If prohibited from adding articles (that is, "fill ins"), he would have but one sale a year and be out of business.

Plaintiff Herman Sparber had been a licensed auctioneer for 30 years. He formerly conducted a jewelry store in St. Louis. His principal business is the auctioning of jewelry on a commission basis between 6 p.m. and 8 p.m. on Mondays and Thursdays. He testified that downtown department and other stores were open at the same time, some remaining open until 8:30 p.m. His sales are made on the basis that the customer, if dissatisfied, may return the article with his receipt and receive back his purchase money. Jewelers going out of business fare much better by auctioning their stock than by selling to jobbers or dealers. It generally takes from 4 weeks to 4 months to liquidate a stock of jewelry, and what is then left is "jobbed off" at about 20 cents on the dollar. It is necessary to use "fill ins" to carry on an auction of a jewelry store and have it amount to anything. The advertisements state "fill ins" or additional stock will be used. He stated a profit could be made on a standard article if sold for half price, and some paid more and some paid less than that at auctions.

The testimony was that to comply with § 22 requiring the auctioneer to make and file with the license collector an accurate inventory of every article to be offered for sale and to tag each such article to show its carat weight, purity, metal or plating, color and quality, number of jewels et cetera would entail a prohibitive expense; as to be accurate

one would have to take [627] stones out of their settings, weigh and appraise them, reset them and repolish the article, which would cost, perhaps, $3 to get the stones out and $35 to reset them.

June and December, by reason of gifts, are the best months for the sale of jewelry, and prohibiting the auction of jewelry in said months would materially affect the business.

The city offered no witness.

The city contends that §§ 19 through 24, supra, were enacted to prevent fraud and deception and to protect the financial welfare of its citizens, are reasonable and valid regulations under the police power of the city and, hence, the trial court erred in holding said sections invalid and unconstitutional. The city stresses Holsman v. Thomas (1925), 112 Oh. St. 397, 147 N. E. 750, 39 A. L. R. 760; Biddles, Inc. v. Enright (1925), 239 N. Y. 354, 146 N. E. 625, 39 A. L. R. 766; Mogul v. Gaither (1923), 142 Md. 380, 121 A. 32; Levy v. Stone (1929), 97 Fla. 458, 121 So. 565. These and other cases cited by the city are distinguishable in that §§ 1—18, supra, also regulate auctions in defendant city. For annotations on the subject matter and that the rulings are not all one way, see 111 A. L. R. 473, 39 A. L. R. 773, 31 A. L. R. 299.

Biddles v. Enright, supra, a leading case involving an auction of jewelry, upheld statutory provisions (known as the Sunset law) requiring the auction of goods generally, subject to specifically named exemptions, in the city of New York to be in the daytime. The court reasoned that bidders might be deceived where they examined precious stones et cetera under artificial light with no opportunity for examination by daylight without any actual intent on the part of the auctioneer to defraud, and that thugs might gather at night where jewelry was on display and rob bidders carrying away such purchases. (39 A. L. R. l.c. 770.) The Biddles case points out that the original reasoning for such enactments was stated in the preamble of an act of the colonial assembly of New York in 1773, reading: " 'Whereas a Practice of Selling Goods by Auction at Night, when their Qualities cannot be accurately distinguished, has obtained in the City of New York, whereby the unwary have been frequently imposed upon, and great Frauds committed, for prevention whereof, Be It Enacted' " et cetera. From People ex rel. Moskowitz v. Jenkins (1911), 202 N. Y. 53, 94 N. E. 1065, 35 L. R. A. (NS) 1079, 1083, it appears that in New York during and ever since colonial times it was not lawful for citizens generally to pursue the occupation of auctioneer, it being a business of privilege and not of right and subject to special license and authority; citing People ex rel. Schwab v. Grant (1891), 126 N. Y. 473, 27 N. E. 964, 965, cited in the Biddles case and holding the mayor of New York's refusal to license an auctioneer was not subject to supervision or control.

In Holsman v. Thomas, supra, ordinance provisions of Cleveland somewhat similar to restrictions 1, 2 and 4 (§§ 20, 21, 23) above were held constitutional, being within the police power of the city. The court cites and quotes (39 A. L. R. l.c. 765) Biddles v. Enright, supra, and Mogul v. Gaither (mentioned in a subsequent paragraph), supra, where a provision similar to restriction 1 (§ 20) above was held not an arbitrary classification between those engaged in the jewelry business for one year and others so engaged for a lesser time. The Holsman case quoted a portion of Mogul v. Gaither (not determining whether the descriptions stated were accurate), to the effect: " ' "That but two classes of persons sell such merchandise at public auction, viz.: (a) Reputable merchants, because either retiring from business, or of a wish to reduce inventory, or of the need or wish to raise money more quickly than by sale in the ordinary course of business. (b) By merchants, not reputable, who would make sales at public auction from a desire to deceive and defraud the public, who often are itinerant merchants with but little, if any, financial responsibility, who go from place to place to make such sales and remain in each place but a short time, leaving it in time to avoid being held civilly or criminally [628] responsible for the fraud of such sales." ' "

In Levy v. Stone, supra, ordinance provisions prohibiting the sale of jewelry between 6 p.m. and 8 a.m. (restriction 5—§ 21) were held within the municipal police power to protect the public against deception, fraudulent imposition, and unscrupulous practices. The court, stating that there was some diversity of opinion, stressed the Holsman and Biddles cases, supra.

Other cases are to like effect. Provisions forbidding the auction of jewelry at night have been sustained in Doering v. Swoboda (1934), 214 Wisc. 481, 253 N. W. 657[5, 6]; Matheny v. Simmons (1932), 165 Miss. 429, 139 So. 172[1]; Davidson v. Phelps (1926), 214 Ala. 236, 107 So. 86[3]; Re West (1925), 75 Cal. App. 591, 243 P. 55[7]; Clein v. Atlanta (1927), 164 Ga. 529, 139 S. E. 46, 53 A. L. R. 933, 939; Wagner v. Trenton (1926), 102 N. J. L. 492, 134 A. 115[2]; City of Roanoke v. Fisher (1923), 137 Va. 75, 119 S. E. 259, 262[4]. Provisions forbidding auction sales of jewelry continuing for more than 30 days within one year were sustained in Gordon v. Indianapolis (1932), 204 Ind. 79, 183 N. W. 124, and Holsman v. Thomas, supra. Power to regulate auction sales was held to include the power to prohibit the auction of jewelry in State ex rel. Cook v. Bates (1907), 101 Minn. 301, 112 N. W. 67, but compare Orr v. Rochester (1935), 193 Minn. 371, 258 N. W. 569.

Plaintiffs first contend that §§ 19-24 contravene Art. III, § 40(30), of the Constitution of Missouri prohibiting any special law "where a general law can be made applicable, and whether a general law could have been made applicable is a judicial question to be

judicially determined without regard to any legislative assertion on that subject.''

City of Springfield v. Smith, 322 Mo. 1129, 19 S. W. 2d 1, 3[2, 4, 5], states: ''It is well established in this state that a law is not a special law if it apply to all alike of a given class, provided the classification thus made is not arbitrary or without reasonable basis.'' After pointing out that making the issue a judicial question in Missouri was unique in that only three other states had like constitutional provisions, the court further said: '' * This is important, because little aid can be given in the present controversy by decisions of some of the other jurisdictions tending to hold that the question of classification is solely a legislative one.''

In State ex inf. v. Hedrick, 294 Mo. 21, 241 S. W. 402, 420, we said: ''The basis of sound legislative classification is similarity of situation or condition with respect to the feature which renders the law appropriate and applicable. A law may not include less than all who are similarly situated. If it does, it is special, and therefore invalid, because it omits a part of those which in the nature of things the reason of the law includes.'' And (l.c. 407) we quoted the following from Budd v. Hancock, 66 N. J. L. 135, 48 A. 1024: '' 'The test of a special law is the appropriateness of its provisions to the objects that it excludes. It is not, therefore, what a law includes, that makes it special, but what it excludes.' ''

In holding an ordinance prohibiting automobile dealers from keeping their places of business open on Sundays and six national holidays a special law, court en banc in McKaig v. Kansas City, 363 Mo. 1033, 256 S. W. 2d 815, 817[5, 6], and 818[8], quoted and applied the foregoing from State ex inf. v. Hedrick, supra, together with the following from Reals v. Courson, 349 Mo. 1193, 164 S. W. 2d 306, 308[4]: ''If in fact the act is by its terms or 'in its practical operation, it can only apply to particular persons or things of a class, then it will be a special or local law, however carefully its character may be concealed by form of words.' '' See also Laclede P. & L. Co. v. St. Louis, 353 Mo. 67, 182 S. W. 2d 70, 72.

■ Licenses and regulations that tend to discourage or even prohibit may be imposed on businesses and occupations that are inherently harmful and dangerous to society or the public welfare; but businesses and occupations that are lawful and useful [629] may not thus be oppressed or prohibited by harsh enactments. McQuillin, Municipal Corporations, 3d Ed., §§ 24.46, 24.320, 24.323—325; 37 Am. Jur. 956, §§ 305, 308; 16 C. J. S. 1416, §§ 668, 669; 53 C. J. S. 509, §§ 16, 17; 62 C. J. S. 323, § 161. Unprincipled persons engage in many useful businesses and occupations. The justification for suppressing or prohibiting a business or occupation should be found in its inherent nature. See People ex rel. Moskowitz v. Jenkins, 202 N. Y. 53, 58, 94 N. E. 1065, 1067, 35 L. R. A. (NS) 1079, 1083; Adams v. Tanner, 244

U. S. 590, 594; 37 S. Ct. 662, 61 L. Ed. 1336, L. R. A. 1917F, 1163, Ann. Cas. 1917D, 973; Korber v. Portland, 135 Or. 233, 295 P. 203, 204; Kusnetzky v. Security Ins. Co., 313 Mo. 143, 157 (III), 281 S. W. 47, 51[5].

█ The Biddles, Holsman, Mogul, Levy and other cases, supra, cited by the city proceed on the theory that auction sales are proper subjects to be suppressed or prohibited. Other and later cases do not place sales by auction in the category of businesses or occupations to be suppressed or prohibited, as, for instance, slaughterhouses, fireworks manufacturers, scavengers, saloonkeepers. The business of selling goods by auction has been said to be as old as the law of sale and to be a lawful and useful business. 7 C. J. S. 1239, §§ 1, 2; 5 Am. Jur. 446, §§ 2, 3. It, as are other occupations, is subject to reasonable regulations. 5 Am. Jur. 447, §§ 2-4; 6; 7 C. J. S. 1241, § 2; McQuillin, Municipal Corporations, 3d Ed., § 24.368; Antieau, Municipal Corporations, § 6.05(2).

█ Missouri statutes (Ch. 343, RSMo 1949) licensing and regulating auctioneers contemplate auction sales by licensed auctioneers for others and also at auction stores or rooms (Id., § 343.110).

█ The sale of jewelry by auction is not a pernicious business subject to being prohibited by legislation. Korber v. Portland (1931), 135 Or. 233, 241, 295 P. 203, 206; Orr v. Rochester (1935), 193 Minn. 371, 258 N. W. 569[2]: See Miller v. Greenville (1926), 134 S. C. 314, 132 S. E. 591, 46 A. L. R. 155, 156, 157 (involving a jewelry auction).

Cases involving regulations of the sale of general merchandise at auction, not specifically regulating auctions of jewelry, have held unconstitutional and invalid restrictions, among others, to the following effect: Prohibiting sales by auction. Balesh v. Hot Springs (1927), 173 Ark. 665, 293 S. W. 14; Miller v. Greenville (1926), 134 S. C. 314, 132 S. E. 591, 46 A. L. R. 155, 157. Prohibiting sales for more than a stated number of consecutive days in any calendar year. Miller v. Greenville, supra; Commonwealth v. Loeb (1932), 245 Ky. 843, 54 S. W. 2d 373, 374[3, 4]. Prohibiting auctions between the hours of 6 p.m. and 8 a.m. Miller v. Greenville, supra; Webber v. Scottsbluff (1942), 141 Neb. 363, 3 N. W. 2d 635, 638[6-8]; People v. Gibbs (1915), 186 Mich. 127, 152 N. W. 1053[5], Ann. Cas. 1917B, 830, 834; Perry Trading Co. v. Tallahassee (1937), 128 Fla. 424, 174 So. 854, 111 A. L. R. 463, 466, 470. Prohibiting additions to a regular stock of merchandise. Webber v. Scottsbluff, supra; Perry Trading Co. v. Tallahassee, supra; Jones v. Jackson (1953), 195 Tenn. 329, 259 S. W. 2d 649, 651. Prohibiting the owner naming an upset price. Perry Trading Co. v. Tallahassee, supra. Requiring the merchant to have been in business in the city for one year. Commonwealth v. Loeb, supra. Requiring the filing of an inventory with an official prior to the auction showing in detail the quality, quantity et cetera of the merchandise to be auctioned. Webber v. Scottsbluff, supra. See also Jones v. Jackson;

supra. Requiring a statement attached to each article to be auctioned showing the materials and its quality. Perry Trading Co. v. Tallahassee, supra. See also Jones v. Jackson, supra. Requiring the posting of a bond. Perry Trading Co. v. Tallahassee, supra. Among the reasons advanced for holding the restrictions invalid were: They did not have any relation to the public health, safety or welfare (Webber v. Scottsbluff; Commonwealth v. Loeb), and, if considered as police regulations, were oppressive and prohibitory [630] rather than regulatory, being arbitrary and unreasonable and imposing unnecessary restrictions on auction sales (Webber v. Scottsbluff; Perry Trading Co. v. Tallahassee; Miller v. Greenville; People v. Gibbs).

It is pointed out in Mogul v. Gaither, and quoted with approval in Holsman v. Thomas, supra, 39 A. L. R. l.c. 765, with respect to ordinance provisions similar to § 20 here involved that "the obvious purpose" is to permit merchants who have an established business of one year's standing as a jeweler to dispose of his stock of jewelry by auction upon certain conditions while prohibiting auction sales of jewelry by those who conduct auctions as a business. This holding prohibits citizens generally from conducting the lawful business of selling jewelry at auction.

The public is protected under § § 1 through 18, supra, against the objections found in the city's authorities and which the city adopts in its presentation. Disreputable persons and itinerants are not eligible to be licensed to sell merchandise at auction or to act as auctioneers in the city. Not only must the licensee be a resident of the state but he must have been continuously engaged for a year in business in the city as a licensed auctioneer or auction crier or as a merchant (§ 4). He is required to give a $3,000 bond for the protection of bidders against misrepresentations and other violations of § § 1—18 (§ 5); and each purchaser of an article costing $2.50 or more receives an invoice containing a full description of the article, its selling price and every warranty under which the article was auctioned (§ 16). These and other restrictions in said § § 1—18 on auctioneers and auction sales in the city, some of which are not mentioned herein, distinguish this case from the city's authorities. The instant record is to the effect that the citizens are not defrauded or imposed upon by auction sales of jewelry in the city but make purchases of jewelry to their advantage at less than retail prices, and that stores selling jewelry in the city are open after 6 p.m. on Mondays and Thursdays. Regulation contemplates the continued existence of the thing regulated.

A retail auction sale of jewelry is made unlawful under § § 19—24 "unless the person * whose stock is being offered * shall have been in the retail jewelry * business at the location * at which said auction sale is to be cried for at least one year *, and shall not have conducted an auction sale at any time within said one year period at said location or on said premises." § 20. Said § 20 divides auction sales

of jewelry into auctions by retail jewelers who have been in business for one year and auctions by those who conduct auction sales as a business, permitting the former under certain conditions, while prohibiting the latter, to conduct an auction sale of jewelry. See Holsman v. Thomas, supra. It next divides said jewelers into those who have been in business for one year at the location at which the auction sale is to be cried and jewelers who have not been in business at their location for one year. Again, the last above preferred class of jewelers are divided into those who have not conducted an auction sale at any time within one year at their location and those who have conducted an auction sale within one year at their location. Section 20 prohibits such auctions by the last-mentioned class in each instance. We do not perceive how the classifications mentioned affect the public health, welfare or safety of the citizens of the community; and whether they do there are no distinctive circumstances which reasonably justify limiting the right to conduct retail auction sales of jewelry to those so authorized by § 20 while excluding others of the same class from so doing. Failing to include all who are similarly situated, the law is a special law. Springfield v. Smith, supra; Ex parte Lerner, 281 Mo. 18, 218 S. W. 331, 333[6]; State v. Baskowitz, 250 Mo. 82, 100, 156 S. W. 945, 953[8], Ann. Cas. 1915A, 447; Laclede P. & L. Co. v. St. Louis, 353 Mo. 67, 182 S. W. 2d 70, 73[6]. We think the Missouri cases stressed by the city are distinguishable on the facts involved. Some involved matters subject to being prohibited by legislation. [631] City of Springfield v. Stevens, 358 Mo. 699, 216 S. W. 2d 450; Ex parte Lockhart, 350 Mo. 1220, 171 S. W. 2d 660; State v. Kennedy, 343 Mo. 786, 123 S. W. 2d 118; Waters v. St. Louis, Mo., 259 S. W. 2d 377.

The judgment is affirmed. *Barrett* and *Stockard*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.