STATE of Missouri ex rel. JIMMY'S WESTERN BAR–B–Q, INC., Respondent,

v.

CITY OF INDEPENDENCE, Missouri, et al., Appellants.

No. KCD 26934.

Missouri Court of Appeals, Kansas City District.

Aug. 4, 1975.

Motion for Rehearing and/or Transfer Denied Sept. 2, 1975.

Application to Transfer Denied Oct. 13, 1975.

Richard G. Carlisle, Asst. City Counselor, Independence, for appellants.

C. John Forge, Jr., Independence, for respondent.

Before SOMERVILLE, P. J., PRITCHARD, C. J., and TURNAGE, J.

PRITCHARD, Chief Judge.

The ultimate issue, as stipulated by the parties, is whether as a matter of law appellant, City of Independence, Missouri, has the police power, discretion or duty to refuse a license to Charles Vincent Scola, doing business as Jimmy's Western Bar-B-Q, Inc. (the respondent), based upon the personal fitness of Scola. The matter before the trial court was a petition for a writ of mandamus to compel appellant to issue applicant-respondent an occupation license to operate a restaurant in Independence, Missouri, which writ was issued by the judgment of the trial court.

The trial court made the following "Memorandum Opinion Findings of Facts and Conclusions of Law" which are adopted in part as the opinion of this court:

"In this action Plaintiff corporation seeks a writ of mandamus compelling Defendants to issue it a license to operate a restaurant.

"The parties have filed a written stipulation of facts. Briefly, Plaintiff corporation made application for an occupation license to operate a restaurant in Independence, Missouri. Charles Scola, managing officer of plaintiff, paid the required fee and received a receipt but no license. The Independence licensing authorities refused to issue a license to Plaintiff and the City Council of the City of Independence at one of its regular meetings voted to deny the issuance of the license to Plaintiff herein. The reason advanced by the City for refusal to issue the license was the arrest record of Charles Vincent Scola. Scola's arrest record contains ninety entries for violations of various City ordinances including forty

traffic violations and one felony conviction in 1969 for tampering with a motor vehicle.

"The parties have stipulated that the ultimate issue is 'whether or not the City of Independence has the police power, discretion or duty to refuse a license to said Charles Vincent Scola, doing business as Jimmy's Western Bar-B-Q, Inc., based upon the personal fitness of said applicant.'

"In addition to the written stipulation with the attached exhibits, the Court has been furnished a copy of Chapter 5 of the Independence City Ordinances providing for the issuance of licenses and a payment of a license tax.

"As indicated by the parties through their written stipulation the sole issue in this case is whether or not the City by its licensing agency or City Council has any discretion to deny the applicant a license to operate a restaurant.

"The defendants seek to justify their refusal to grant plaintiff a license upon the exercise of the police power. There seems to be little question but that the City of Independence has the right under its Charter to 'regulate license and inspect . . restaurants' and to prohibit acts which may be 'detrimental to the health, morals, comfort, safety, convenience or welfare of the inhabitants of the City' and to 'promote and maintain the comfort, education, morals, safety, peace, government, health, welfare . . . of the City and its inhabitants.' However, the license ordinances (Chapter 5, Ordinances, City of Independence) do not relate to the exercise by the municipality of its police power. When considered as a whole, the license tax ordinance is nothing more than a revenue producing measure. It provides in effect that upon application any firm, person or corporation engaged in the businesses enumerated therein shall be issued a license upon payment of a fee. The ordinance lists twelve pages of occupations which must be licensed including practically every conceivable occupation from Blacksmiths and Coal Dealers to agencies for the sale of Lightning Rods and Repair-

ing of Umbrellas. Issuance of a license under the ordinance requires nothing more than a payment of a fee. No criteria for a denial of a license are established by the ordinance.

"For the Defendant City to be entitled to deny Plaintiff a license there must be some reasonable relationship between such denial and the exercise by the City of its police power. While it is true that the City under the exercise of its police power can regulate restaurants in connection with health standards and cleanliness and deny an applicant a license for violation of a health standard, it may not deny a license for an arbitrary reason unrelated to the reasonable exercise of the police power. The issuance of a license in this case and under this ordinance is nothing more than a ministerial act to be performed by the municipal authorities upon the payment by the licensee of a fee. The refusal to issue the license was in no way connected with any health or cleanliness standards.

"The record of Plaintiffs' managing officer, Charles Scola, may give the City Council cause for concern in view of his frequent violation of municipal ordinances, but there is nothing in this record upon which the City acted to indicate that the Plaintiff herein is unfit as a purveyor of food nor is there any basis for a denial of plaintiff's application for a license on the basis of the personal fitness of Charles Scola. As was stated in *Hagerman vs. City of St. Louis* [365 Mo. 403], 283 S.W.2d 623, 629, '. . businesses and occupations that are lawful and useful may not thus be oppressed or prohibited by harsh enactments . . . *Unprincipled persons engage in many useful businesses and occupations.* The justification for suppressing or prohibiting a business or occupation should be found in its inherent nature.'

"The most that can be said here is that Plaintiffs' manager has a record of numerous arrests but that does not justify the City in denying Plaintiff's application for a restaurant license. Insofar as the City may

have some discretion to act under the police power, that discretion may not be exercised arbitrarily without adequate safeguards. Absent standards clearly spelled out either within the Charter or the ordinance, the denial of a license to Plaintiff here constitutes a denial of due process of law as prohibited by our State and Federal Constitutions. The action of the Defendant Council was improper because it lacked discretion to deny Plaintiff's application.

"Because the Council lacked discretion, the issuance of a license to Plaintiff was nothing more than the exercise of a ministerial act upon the payment of the appropriate fee. Mandamus lies to correct the failure of a municipality to perform a ministerial act.

"It follows therefore that Plaintiff is entitled to the relief prayed for in its petition and that the City should be commanded to issue Plaintiff a license to operate a restaurant."

Appellant first says that the above conclusion of the trial court that "absent standards clearly spelled out either within the Charter or the ordinance, the denial of a license to Plaintiff here constitutes a denial of due process of law as prohibited by our State and Federal Constitutions" is a conclusion on an issue not pleaded. Respondent did not plead any constitutional issue, but apparently, according to appellant's brief, argument was made to the trial court thereon. The matter need not be further noticed because the basic issue may be decided without reference to any constitutional issue.

The Business and Occupations License Tax ordinance, Chapter 5, first provides that every person, firm, partnership, association or corporation shall be required to obtain a license every year for businesses, professions, occupations or callings (with certain exemptions) designated in the Chapter. Sec. 5.022 provides that no license shall be issued until all personal taxes, merchants and manufacturers taxes, special assessments, license fees, permit fees, inspec-

tion fees, utility charges and other financial obligations which are delinquent and owing to the city have been paid in full. Although it was stipulated that Scola paid $14.75 with his application for a license and received a receipt therefor; that the receipt was not a license and Scola was so informed; and that Scola operated the corporation since October 14, 1971 (this mandamus action was filed on October 22, 1971); and that Scola had not been authorized by appellant to conduct a business in the city, there is no evidence that respondent ever failed to pay any license fee or tax under Sec. 5.022. Appellant says that two stipulated disturbance of the peace charges against Scola, resulting in fines, occurred at Jimmy's Western Bar-B-Q, but reference to the transcript does not reveal the situs of the offenses as claimed by appellant in its brief.

Section 5.024 relates to the issuance of all licenses "subject to licensee's compliance with all building code, health, fire and zoning requirements and other applicable ordinances of the City of Independence." There is no evidence that Scola did not so comply, and there is no evidence that the stipulated arrests for and convictions of offenses had any relation whatsoever to the operation of the business of a restaurant. The Supervisor of License Inspection *shall* issue the licenses subject to the quoted condition subsequent of compliance with building, health, fire, zoning and other applicable ordinances, and no doubt, a subsequent failure to so comply could result in and be the basis for license revocation proceeding under Sec. 5.046 of the ordinance.

There is no standard or "criteria" concerning any requirement of good character or fitness anywhere set forth in the ordinance. See *Corro v. Moss*, 184 Misc. 1050, 56 N.Y.S.2d 652 (N.Y.Sup.1945). No discretion is anywhere vested by the ordinance in the licensing authority to grant or withhold a license to operate a restaurant on the ground of good character or personal fitness of the applicant. Undoubtedly, standards of qualifications could be set by the

ordinance, "where the restriction has a reasonable relationship to the protection of the public health, safety, welfare or morals in view of the nature of the occupation or activity that is licensed." 9 McQuillin, Municipal Corporations, § 26.46, p. 106. And although both that authority, and 53 C.J.S. Licenses § 38, p. 635, make reference to a proposition that "a license may be refused on the ground that applicant is not of good moral character or is not a suitable person to exercise the privileges granted by the license, *even though the statute or ordinance does not require that applicant be a fit and proper person*, and applicant's previous misconduct which shows he is not a suitable person may be considered," [the italicized portion of the quote is relied upon by appellant in its contention that it could consider respondent's fitness even though not required by the ordinance], the C.J.S. text goes on, "The licensing authorities are not justified in refusing a license on a moral appraisal, or for previous misconduct, which is not relevant to the conduct of the business for which a license is sought, * * *."

Of the stipulated 90 court and police encounters by Scola, 51 were either mere arrests, with no disposition or were dismissed, these matters beginning in 1959 and ending in December, 1971. Traffic offenses were 18 in number, resulting in fines. In 1960, apparently there was a conviction for tampering with a motor vehicle, with a one year sentence in the County Jail, and a "bench parole". Other various offenses were of less serious nature, ranging from assault (1962), peace disturbance, disorderly conduct, no licenses on truck, no occupation license (1966), interference with officer, and failure to appear. There is no showing whatsoever that these offenses, although miscreant and not the normal activities of the peaceful, law-abiding citizen, would have any relation to the business of operating a restaurant, which is, of course, a legitimate business not having any inherent tendency to be hurtful or detrimental to the public, such as the liquor business, dance halls and pool halls, as noted in *Flanagan v. Town of Petersburg*, 108 W.Va. 111, 150 S.E. 382, 385 (1929).

■ The trial court based its decision upon the proposition that the ordinance is a revenue law, requiring only the exercise of a ministerial, non-discretionary, act of issuing an occupation license to anyone who applied and who paid the fee. As noted, there are no standards contained in the ordinance by which the fitness of an applicant could be determined, and even if it did, those standards would have to be referable to the type of occupation sought to be regulated. A licensing ordinance can, of course, be both for revenue purposes and regulation. *Asotsky v. Beach*, 319 Mo. 810, 5 S.W.2d 22, 26 (Mo. banc 1928). In the sense that the ordinance herein exacts a fee, it is a revenue measure. But no portion of that fee, so far as the ordinance provides and as appears by the record, is allocated for the purpose of paying for regulation from any separate fund. *City of Odessa v. Borgic*, 456 S.W.2d 611, 619 (Mo.App.1970). The regulatory portions of the ordinance come into play after the license fee is paid and the license is issued. None of these regulatory measures are imposed as a condition to the issuance of the license. These regulations relate to: a separate license for each place of business; display of licenses, restrictions on transfer of licenses; possession of a Missouri retail sales license; payment of financial obligations delinquent and owing to the city; compliance with building codes, health, fire and zoning requirements; the city's power to examine the applicant's books, prohibition in operating any business otherwise prohibited by ordinance; power to suspend or revoke licenses on final adjudication of violation of city ordinances; prohibition on doing business without a license or making false statements in an application; police reporting procedures for violations of ordinances and power to arrest therefor. There is no contention that respondent owed anything to the city other than the instant license fee which initially was tendered. Since respondent has com-

plied with all of the requirements for the issuance of a license, the trial court is correct in concluding that the issuance of a license itself is but a ministerial act of appellant's Supervisor of License Inspection.

To hold that appellant city could deny an occupation license upon a claimed lack of personal fitness based upon past conduct totally unrelated to the legitimate occupation sought to be pursued would be to grant it a power which could be arbitrarily imposed upon each and every applicant for the many listed businesses, professions, occupations and callings subject to the licensing ordinance.

The judgment is affirmed.

All concur.